# **Exhibit K**

## PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (this "**Agreement**") is made and entered into as of January 10, 2018 (the "**Effective Date**"), by and between THE CONDOMINIUM ASSOCIATION OF THE LYNNHILL CONDOMINIUM, a Maryland condominium association ("**Seller**"), and AHH16 DEVELOPMENT, LLC, a Maryland limited liability company ("**Purchaser**") with reference to the following.

## RECITALS

A.     In Case No. CAE 16-40059 in the Circuit Court for Prince George's County, Maryland, the court entered an order dated November 2, 2017 ("**State Court Order**") authorizing Seller to convey the real estate, amenities and improvements (including residential units) thereon located at 3103-3107 Good Hope Avenue, Temple Hills, Maryland 20748 (the "**Property**").

B.     The Property is described on Exhibit A to this Agreement.

C.     Seller shall commence a case (the "**Bankruptcy Case**") under the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.,* as amended (the "**Bankruptcy Code**") by filing a voluntary petition in the United States Bankruptcy Court for the District of Maryland (the "**Bankruptcy Court**"). The date of commencement of the Bankruptcy Case is referred to in this Agreement as the "**Petition Date**."

NOW, THEREFORE, in consideration of the foregoing and the agreements of the parties set forth herein, Seller and Purchaser agree as follows.

1.     PURCHASE AND SALE OF PROPERTY.  On and subject to the terms and conditions stated in this Agreement, Seller shall sell the Property to Purchaser and Purchaser shall purchase the Property from Seller.

2.     PURCHASE PRICE AND DEPOSIT.

2.1     Payment.  The purchase price (the "**Purchase Price**") for the Property will be the sum of Thirteen Million Two Hundred Thousand Dollars ($13,200,000.00).  The Purchase Price will be payable by wire transfer of immediately available funds at the Closing described below.

2.2     Deposit.

2.2.1     Within three (3) business days after the Petition Date, Purchaser shall deposit with the Escrow Agent (as hereinafter defined), the sum of Two Hundred Fifty Thousand Dollars ($250,000.00) in the form of wire transfer or other immediately available funds (together with all interest thereon, the "**Deposit**").  Prior to making the Deposit, Seller, Purchaser and the Escrow Agent shall enter into an escrow agreement substantially in the form of Exhibit B to this Agreement (the "**Escrow Agreement**").  Purchaser's failure timely to deposit any amount required pursuant to this Section 2.2.1 shall render this Agreement null and void. "**Escrow Agent**" shall initially mean Madison Title for purposes of holding the Deposit; provided,

1

however, from and after the date that is ten (10) days before Closing, Escrow Agent shall mean Stewart Title Guaranty Company or such other entity as is acceptable to Seller.

2.2.2    Escrow Agent shall place the Deposit in a non-comingled interest-bearing escrow account at a federally-insured commercial bank reasonably acceptable to both Seller and Purchaser.  The Escrow Agent shall hold the Deposit in accordance with this Agreement and the Escrow Agreement.  At Closing, Escrow Agent shall deliver the Deposit to Seller and credit it against the Purchase Price.

2.3    DIP Funds.

2.3.1    Seller and Purchaser acknowledge and agree that, on or about December 18, 2017, Purchaser, in its capacity as post-petition lender (the "**DIP Lender**"), agreed to make a secured loan to Seller in the principal amount of One Million Two Hundred Fifty Thousand Dollars ($1,250,000), with the principal sum of Four Hundred Thousand Dollars ($400,000) (the "**Pre-Petition DIP Funds**") being advanced by Purchaser to Seller prior to the Petition Date, and the principal sum of Eight Hundred Fifty Thousand Dollars ($850,000) to be advanced by Purchaser to Seller after the Petition Date.

2.3.2    Seller and Purchaser acknowledge and agree that pursuant to that certain Promissory Note ("Note") given by Seller to Purchaser in the original stated principal amount of Four Hundred Thousand Dollars ($400,000) dated December 18, 2017 and annexed hereto as Exhibit C, Purchaser advanced to Seller the Pre-Petition DIP Funds on December 18, 2017.

2.3.3    Upon Bankruptcy Court approval, Purchaser shall advance to Seller the principal sum of Eight Hundred Fifty Thousand Dollars ($850,000) pursuant to the budget approved by the Bankruptcy Court (the "**Post-Petition DIP Funds**" and, together with the Pre-Petition DIP Funds, the "**Bankruptcy Funding Commitment**").

2.3.4    At Closing, Escrow Agent shall credit against the Purchase Price payable by Purchaser the amount of the Bankruptcy Funding Commitment that has been advanced to Seller but then remains unpaid, plus any interest accrued but unpaid thereon and any and all of Purchaser's fees related to the Bankruptcy Funding Commitment and Note payable as provided in and subject to Section 9.5.1.

2.4    Rehabilitation Costs.  Purchaser acknowledges and agrees that it will expend One Million Dollars ($1,000,000) for purposes of rehabbing the Property to cause the Property to comply with certain life, health and safety requirements of Prince George's County (the "**Rehabilitation Costs**"). At Closing, Escrow Agent shall credit the Rehabilitation Costs against the Purchase Price, as adjusted pursuant to Section 9.5.

3.    TITLE AND SURVEY.

3.1    State of Title to be Conveyed.  Title to the Property shall be conveyed by Seller to Purchaser at Closing in fee simple by Quitclaim Deed, subject to the following ("**Permitted Exceptions**"): all matters disclosed in the Title Commitment and all other matters of record or observable at or about the Property or that otherwise run with the land but excluding any such

matters to which the Property is not to be sold subject as may be provided in the Sale Order described below.

      3.2    Title Commitment and Survey.  Purchaser has ordered a title commitment for the Property, including title searches ("**Title Commitment**"), together with copies of all instruments referred to in said title commitment, copies of all of which shall promptly be provided to Seller. Seller shall pay for the Title Commitment, out of the Bankruptcy Funding Commitment in an amount not to exceed $10,000.  If Purchaser obtains a survey of the Property Purchaser shall promptly provide the survey to Seller.

4.      PROPERTY INFORMATION.

      4.1    Seller has previously delivered, or shall use commercially reasonable efforts to provide, Purchaser with any requested materials concerning the physical condition of the Property in Seller's possession or control to Purchaser (the "**Property Information**").  Purchaser shall keep such Property Information confidential, and Seller makes no representation or warranty as to the truth or accuracy of the Property Information provided to Purchaser, except as otherwise expressly provided in this Agreement.  If Closing does not occur for any reason whatsoever, all Property Information and any tests and studies performed by Purchaser shall be delivered or returned promptly to Seller.

5.      PROPERTY CONDITION.

      5.1    Express Representations.  Except as provided in the express representations and warranties of Seller set forth in Section 6.1 of this Agreement (collectively, the "**Express Representations**"), Seller does not, by the execution and delivery of this Agreement, and Seller shall not, by the execution and delivery of any document or instrument executed and delivered in connection with Closing, make any representation or warranty, express or implied, of any kind or nature whatsoever, with respect to the Property, and all such warranties are hereby disclaimed.

      5.2    Disclaimed Matters.  Without limiting the generality of the foregoing, other than the Express Representations, Seller makes, and shall make, no express or implied warranty as to matters of zoning, acreage, tax consequences, physical or environmental condition (including, without limitation, laws, rules, regulations, orders and requirements pertaining to the use, handling, generation, treatment, storage or disposal of any toxic or hazardous waste or toxic, hazardous or regulated substance), valuation, governmental approvals, governmental regulations or any other matter or thing relating to or affecting the Property (collectively, the "**Disclaimed Matters**").

      5.3    As Is, Where Is.  Notwithstanding anything to the contrary set forth in this Agreement, the Property including without limitation the roofs, all structural components, all heating, ventilating, air conditioning, mechanical, plumbing, and electrical systems, fire and life safety and all other parts of the buildings constituting a portion of the Property, shall be conveyed to Purchaser, and Purchaser shall accept same, in their "AS IS" "WHERE IS" condition on the closing date, "WITH ALL FAULTS" and "SUBJECT TO ALL DEFECTS." Purchaser acknowledges that Seller's willingness to sell the Property to Purchaser at the Purchase Price has been induced, in part, by the agreement of Purchaser to purchase the Property

in such "AS IS" condition. Notwithstanding the foregoing, the Seller has filed a motion for approval to assume a contract with Global Restoration and shall have the trash cleaned and take reasonable steps to eliminate rodents from the Property prior to Closing.

      5.4    <u>Waiver, Release and Discharge of Claims</u>. Without in any way limiting any provision of this Section 5.4, Purchaser specifically acknowledges and agrees that Purchaser hereby waives, releases and discharges any claim it has, might have had or may have against Seller with respect to (a) the Disclaimed Matters, (b) the condition of the Property as of the Closing or any other date, (c) the past, present or future condition or compliance of the Property with regard to any environmental protection, pollution control or land use laws, rules, regulations, orders or requirements, including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act of 1982, or (d) any other state of facts that exists with respect to the Property, all subject to Section 5.3 above.

6.      <u>REPRESENTATIONS AND WARRANTIES</u>.

      6.1    <u>Seller's Representations and Warranties</u>. Seller represents to Purchaser as of the Effective Date:

          6.1.1    <u>Other Sales Agreements</u>. Seller and its principals shall not enter into any other contract to sell the Property except in accordance with the terms of this Agreement or as directed by the Bankruptcy Court.

          6.1.2    <u>Foreign Person</u>. Seller is not a "foreign person," "foreign trust" or "foreign corporation" within the meaning of the United States Foreign Investment in Real Property Tax Act of 1980 and the Internal Revenue Code of 1986, as subsequently amended.

          6.1.3    On the Petition Date, the Seller and Purchaser shall file a joint plan of reorganization proposing to sell the Property to the Purchaser consistent with the terms of this agreement.

      6.2    <u>Purchaser's Representations and Warranties</u>. Purchaser represents to Seller that, as of the Effective Date:

          6.2.1    <u>Organization</u>. Purchaser is duly formed, validly existing and in good standing under the laws of the state of its organization.

          6.2.2    <u>Authority/Consent</u>. Purchaser possesses all requisite power and authority, has taken or will by Closing have taken all actions required by its organizational documents and applicable law, and has obtained all necessary consents, to execute and deliver this Agreement and to consummate the transactions contemplated in this Agreement.

          6.2.3    <u>Nature of Transaction</u>. The purchase of the Property is not contingent upon financing of any nature or kind.

      6.3    <u>Survival</u>. The representations and warranties of each party contained in this Article 6 shall merge in the Seller's Quitclaim Deed and not survive Closing.

4842-3765-2569.v10

7.    COVENANTS PRIOR TO CLOSING.

    7.1    Operation of Property.

        7.1.1    From the Effective Date until the Closing, Seller shall take any steps reasonably requested by Purchaser, and permitted by the State Court Order and any orders of the Bankruptcy Court, to protect the Property and shall not take any of the following actions without the prior written consent of Purchaser, which consent shall not be unreasonably withheld, conditioned or delayed:  (a) make or permit to be made any alterations to or upon the Property except as necessary to protect the Property, (b) enter into any contracts for the provision of services and/or supplies to the Property which are not terminable by Seller prior to Closing, or (c) enter into any new leases or modify existing leases with respect to the Property or any part thereof.

        7.1.2    Notwithstanding the foregoing, Seller shall have no obligation to Purchaser to (a) bring the Property into compliance with any laws or regulations applicable to the Property, (b) make any repairs or improvements to any portion of the Property that would improve the condition of the Property beyond the condition of the Property as it exists on the Effective Date, subject to the Seller's obligations described in Section 7.1.1 and the last sentence of Section 5.3.

        7.1.3    From the date the Sale Order is approved until the Closing, Purchaser shall maintain, and shall be responsible for the costs of maintaining, the Property and shall assume any and all other risks and liabilities of maintaining the Property.

    7.2    Receipt of Governmental Notices.  Prior to Closing, Seller shall provide Purchaser with copies of any written notices that Seller receives with respect to (i) any special assessments or proposed increases in the valuation of the Property, (ii) any condemnation proceedings affecting the Property, or (iii) any violation of any environmental law or any zoning, health, fire, safety or other law, regulation or code applicable to the Property.

    7.3    Litigation.  Seller will advise Purchaser promptly of any litigation, arbitration proceeding or administrative hearing which concerns or affects the Property in any manner and which is instituted after the Effective Date.

    7.4    Insurance.  Prior to Closing, Seller will maintain Seller's existing insurance coverage with respect to the Property.

8.    CONDITIONS PRECEDENT TO CLOSING.

    8.1    Conditions Precedent to Purchaser's Obligations to Close.  Purchaser's obligation to purchase the Property is subject to satisfaction on or before the Closing Date (as such date may be extended as provided herein) of the following conditions, any of which may be waived in writing by Purchaser in Purchaser's sole and absolute discretion:

        8.1.1    Covenants.  Seller shall have performed and observed in all material respects all covenants of Seller under this Agreement.

8.1.2    <u>Representations and Warranties</u>.  All representations and warranties of Seller set forth in this Agreement shall be true and correct in all material respects as if made on the Closing Date.

8.1.3    <u>Title</u>.  A final examination of the title to the Property shall disclose no title exceptions except for the Permitted Exceptions, matters caused by Purchaser or its activities on the Property, or other matters approved in writing by Purchaser.

8.1.4    <u>Bankruptcy</u>.  The conditions set forth in Section 8.4 shall be satisfied.

8.2    <u>Conditions Precedent to Seller's Obligation to Close</u>.  Seller's obligation to sell the Property is subject to satisfaction, on or before the Closing Date (as such date may be extended as provided herein) of the following conditions, any of which may be waived in writing by Seller in Seller's sole and absolute discretion:

8.2.1    <u>Covenants</u>.  Purchaser shall have performed and observed, in all material respects, all covenants of Purchaser under this Agreement.

8.2.2    <u>Representations and Warranties</u>.  All representations and warranties of Purchaser set forth in this Agreement shall be true and correct in all material respects as if made on the Closing Date.

8.2.3    <u>Bankruptcy</u>.  The conditions set forth in Section 8.4 shall be satisfied.

8.3    <u>Failure of a Condition</u>.

8.3.1    In the event that any condition precedent to Closing has not been satisfied on or before the Closing Date, then the party whose conditions to Closing have not been satisfied (the "**Unsatisfied Party**") shall give notice to the other of the condition or conditions which the Unsatisfied Party asserts are not satisfied.  In such notice the Unsatisfied Party shall also elect either (i) to extend the Closing Date for a reasonable period of time (not to exceed twenty (20) days) to allow the satisfaction of the applicable condition, or (ii) to terminate this Agreement, whereupon (a) all Property Information provided to Purchaser by Seller, including copies thereof in any form whatsoever, including electronic form, shall be returned to Seller, along with any and all tests and studies of the Property performed by or on behalf of Purchaser pursuant to Article 5, (b) Escrow Agent shall return the Deposit to Purchaser, and (c) neither party shall have any further rights or obligations hereunder (other than any obligations of either party that expressly survive termination), except if such failure of a condition is due to a default by one of the parties, in which event the non-defaulting party shall have those rights and remedies set forth in Article 11.

8.3.2    If the transaction contemplated by this Agreement closes, then the parties shall be deemed to have waived any and all unmet or unsatisfied conditions, other than any unmet or unsatisfied conditions arising out of a breach by either party of any of its representations and warranties hereunder of which the other party has no knowledge as of Closing.

8.4    Bankruptcy Conditions. The obligations of each Party to consummate the transactions contemplated by this Agreement shall be subject to entry of the Sale Order (defined below) by February 13, 2018.  The Seller engaged in a marketing and auction process that resulted in the execution of this Agreement and induced the Purchaser to undertake its obligation to facilitate and effectuate the Plan to the benefit of the Seller and its estate.  The Parties have agreed, in light of the substantial pre-bankruptcy marketing of the Property and the results thereof, the deleterious and the continuously depreciating condition of the Property and the inherent life and safety concerns affecting the citizens and professionals of Prince George's County as described in the State Court Order  and the urgent need to transfer the Property to ownership who can immediately begin undertaking the efforts to ameliorate the severe health and safety concerns with respect to the Property and restore the Property to use, that it would be futile and risky for the Seller to engage in another auction process after the Petition Date. Instead, the Seller will proceed immediately on the Petition Date to seek to obtain confirmation of a chapter 11 plan providing for the free-and-clear sale of the Property to Purchaser as contemplated by the State Court Order.  Notwithstanding the agreement and intentions of the Parties, if Seller is ordered by the Bankruptcy Court to engage in another auction process after the Petition Date and to solicit competing bid proposals (each, an "**Alternative Transaction**"), then Seller will seek approval from the Bankruptcy Court of the following procedures and bid protections for Purchaser, who for such purpose will be treated as the "stalking horse."  In the event that Seller is not ordered by the Bankruptcy Court to conduct a further auction of the Property, then Sections 8.4.1 (and its sub-parts) shall have no application to this transaction.

8.4.1    Approval of Break-Up Fee and Expense Reimbursement. Seller acknowledges and agrees that Purchaser has expended considerable time and expense in connection with this Agreement and the negotiation thereof and the identification and quantification of assets of Seller.  In consideration therefor:

8.4.1.1 Seller shall file a bidding procedures motion with the Bankruptcy Court, and seek the entry by the Bankruptcy Court of the bidding procedures order, including the approval of the payment of a break-up fee in an amount equal to $600,000 (the "**Break-Up Fee**") and an expense reimbursement in an amount not to exceed $200,000 (the "**Expense Reimbursement**") for Purchaser's reasonable and documented out-of-pocket expenses incurred in connection with the transaction contemplated hereby;

8.4.1.2 The Bidding Procedures Order shall provide that the Break-Up Fee and the Expense Reimbursement shall be paid to Purchaser from the proceeds (the "**Alternative Transaction Proceeds**") of sale on the closing of an Alternative Transaction (as hereinafter defined) approved by Bankruptcy Court and prior to any other distributions to creditors (or otherwise) from the Alternative Transaction Proceeds; and

8.4.1.3 The Bidding Procedures Order shall also provide that no further or additional order from the Bankruptcy Court shall be required in order to give effect to these provisions relating to the terms of payment of the Break-Up Fee and the Expense Reimbursement.

8.4.1.4 In order for any Alternative Transaction to be a qualified bid (each, a "**Qualified Bid**"), it must be:

(i)      in writing;

(ii)      received by Seller and Purchaser at their respective addresses set forth in Section 13.3 no later than the deadline for submitting an Alternative Transaction agreed to by the parties and approved by the Bankruptcy Court (the "**Bid Deadline**");

(iii)      a firm, unconditional bid to purchase the Property, not subject to any contingencies as to the validity, effectiveness and/or binding nature of the offer, including, without limitation, further due diligence review or financing;

(iv)      a firm bid of at least $250,000 in excess of the Purchase Price plus the Break-Up Fee plus the Expense Reimbursement;

(v)      accompanied by sufficient information to demonstrate that the competing bidder has the financial wherewithal and ability to timely consummate the acquisition of the Property on terms and conditions substantially the same as this Agreement, including evidence of adequate financing and a financial guaranty, if appropriate;

(vi)      accompanied by a signed contract substantially in the form of this Agreement, and marked to show any changes made to this Agreement; and

(vii)      accompanied by a good faith cash deposit in an amount equal to the Deposit plus the Break-Up Fee plus the Expense Reimbursement, to be deposited with Seller (or Escrow Agent) on or before the Bid Deadline.

8.4.1.5 Seller shall promptly inform Purchaser of all Qualified Bids and any information received related to the terms and conditions of such Qualified Bids;

8.4.1.6 Purchaser shall have the opportunity to increase its offer to a level at least $150,000 in excess of any Qualified Bid to be eligible to become the starting bid at the auction (the "**Auction**") contemplated by the Bidding Procedures Order (the "**Starting Auction Bid**"); and, in connection therewith, Purchaser shall be entitled to credit bid the Bankruptcy Funding Commitment against the purchase price reflected in such Qualified Bid;

8.4.1.7 Seller shall evaluate all Qualified Bids received and shall determine, in consultation with the Purchaser, which Qualified Bid reflects the highest or best offer as the Starting Auction Bid for the Property.  Seller shall announce its determination of the Starting Auction Bid at the commencement of the Auction;

8.4.1.8 The first incremental competitive bid at the Auction shall be at least $150,000 in excess of the Starting Auction Bid, with any subsequent increases of bids to be made in increments of at least $150,000;

8.4.1.9 No bids shall be considered by Seller unless a party submitted a Qualified Bid and participates in the Auction;

8.4.1.10  The Property shall be sold in a single lot;

8

8.4.1.11  If Seller desires to select a bid from an entity other than Purchaser that Purchaser believes is not the highest or best bid, the Bankruptcy Court shall determine which is the successful bidder;

8.4.1.12  When determining the highest or best bid, Seller shall include the Break-Up Fee and the Expense Reimbursement in Purchaser's last bid, which Break-Up Fee and Expense Reimbursement would otherwise be payable to Purchaser;

8.4.1.13  If any overbid from an entity other than Purchaser is accepted but fails to be consummated, Seller shall be obligated to consummate the transaction with Purchaser, at Purchaser's option, on the terms of this Agreement, except for the purchase price, which shall equal the purchase price of the next highest bid that was submitted to Seller during the Auction; and

8.4.1.14  In the event that Seller determines in good faith that it has not received a Qualified Bid by the Bid Deadline that is a higher or better bid than the one represented by this Agreement, Seller shall seek approval of this Agreement at the hearing or hearings held by the Bankruptcy Court to consider the transactions contemplated by this Agreement (the "**Sale Hearing**") without conducting an Auction and without further motion.

8.4.2   <u>Entry of Order Approving Sale</u>.  By February 13, 2018, unless extended by agreement of Seller and Purchaser, the Bankruptcy Court shall have entered an order confirming the Seller's chapter 11 plan, authorizing the free-and-clear sale of the Property to Purchaser pursuant to this Agreement (the "**Sale Order**"), substantially in the form of <u>Exhibit D</u> to this Agreement, which among other things, pursuant to sections 105, 363, 365 and 1146 of the Bankruptcy Code:

8.4.2.1 approves this Agreement and authorizes the sale of the Property by Seller to Purchaser on the terms set forth herein;

8.4.2.2 provides that the sale of the Property vests Purchaser with all right, title and interest of Seller in, to and under the Property free and clear of all encumbrances (other than Permitted Encumbrances, if any), and on an "AS IS" and "WHERE IS" basis, without any representations or warranties of any kind (including no representations or warranties as to merchantability, fitness or use) other than those specifically set forth in this Agreement;

8.4.2.3 finds that Purchaser has provided adequate assurance of future performance under any service contracts and otherwise approves the assumption of such service contracts and assignment to Purchaser;

8.4.2.4 finds that Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and is entitled to the protections thereof;

8.4.2.5 finds that the sale of the Property to Purchaser pursuant to the terms of this Agreement constitutes a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and the laws of the states in which Seller is incorporated and any other applicable non-bankruptcy laws;

9

8.4.2.6 enjoins all Persons from taking any actions against Purchaser or its affiliates to recover any claim which such Person has against everyone other than unrelated claims the Person may have against Purchaser;

8.4.2.7 provides that the Property shall be conveyed free of any obligations of Seller or Purchaser to pay transfer taxes, any obligation of Seller to pay or other taxes, whether arising under law, by this Agreement, or otherwise, and otherwise consistent with the terms of Section 9.5 of this Agreement;

8.4.2.8 provides that the provisions of the Sale Order are non-severable and mutually dependent;

8.4.2.9 provides that Purchaser will not have any successor or transferee liability for liabilities of Seller or associated in any way with the Property (whether under federal or state law or otherwise) as a result of the sale of the Property; and

8.4.2.10  provides that, as of the date of the Sale Order: (a) the Property shall no longer maintain the status of a condominium; (b) the Property shall no longer operate as a condominium; (c) the Property shall be released from any condominium regime; and (d) any and all condominium declarations relating to the Property shall be deemed permanently abandoned.

8.4.2.11  authorizes Seller to execute such other documents and instruments and take such other actions as may be reasonably necessary or appropriate to allow the consummation of the transactions contemplated hereby.

9.    <u>CLOSING</u>.

9.1    <u>Closing Date</u>.  The consummation of the transaction contemplated hereby (the "**Closing**") will take place by mail escrow with the Title Company or, on the date (the "**Closing Date**") that is no later than fifteen (15) days after the entry of the Sale Order. The Closing may be performed "by mail" so as not to require the physical presence of the parties at the applicable location.

9.2    <u>Seller's Obligations at the Closing</u>.  At the Closing, Seller will do, or cause to be done, the following:

9.2.1    <u>Closing Documents</u>.  Seller shall execute, acknowledge (if necessary) and deliver originals of the following documents:

9.2.1.1 A Quitclaim Deed in the form of <u>Exhibit F</u> ("**Deed**");

9.2.1.2 A Certificate of Non-Foreign Status in the form of <u>Exhibit E</u>;

9.2.1.3 A settlement statement showing all of the payments, adjustments and prorations provided for in Section 9.5 and otherwise agreed upon by Seller and Purchaser; and

4842-3765-2569.v10

9.2.1.4 An affidavit for the benefit of the title insurance company conducting the title examination (the "**Title Company**") certifying to the knowledge of the signatory (i) the absence of claims which would give rise to mechanics' and materialmen's liens, and (ii) that Seller has not granted to others the right to possession of the Property in the form of Exhibit G.

9.2.2    Original Property Information Documents. Seller will deliver to Purchaser originals within Seller's possession of all items comprising the Property Information referenced in Article 4.

9.2.3    Possession. Seller will deliver possession of the Property.

9.2.4    Keys. Seller will deliver all keys in its possession, if any.

9.2.5    Costs. Seller will pay all costs allocated to Seller pursuant to Section 9.5 of this Agreement.

9.3    Purchaser's Obligations at the Closing. At the Closing, Purchaser will do, or cause to be done, the following:

9.3.1    Closing Documents. At Closing, Purchaser shall execute, acknowledge (if necessary) and deliver originals of the following documents:

9.3.1.1 A settlement statement showing all of the payments, adjustments and prorations provided for in Section 9.5 and otherwise agreed upon by Seller and Purchaser; and

9.3.1.2 Such evidence as may be reasonably required by the Title Company with respect to the authority of the person(s) executing the documents required to be executed by Purchaser on behalf of Purchaser.

9.3.2    Payment of Consideration. Purchaser will pay to Seller the Purchase Price in accordance with Article 2 of this Agreement, as adjusted in accordance with the provisions of this Agreement.

9.3.3    Costs. Purchaser will pay all costs allocated to Purchaser pursuant to Section 9.5 of this Agreement.

9.4    Escrow. The delivery of the documents and the payment of the sums to be delivered and paid at the Closing shall be accomplished through an escrow with the Escrow Agent.

9.5    Costs and Adjustments at Closing.

9.5.1    Closing Expenses. Examination of title, tax certificates, preparation of documents, conveyancing, notary fees, recordation taxes on any deeds of trust placed by Purchaser, one-half of the Escrow Agent's settlement fee and all other closing costs shall be borne by Purchaser except for payment by Seller of certain costs of the Title Commitment as

provided in Section 3.2 above. Seller shall be responsible for one-half of the Escrow Agent's settlement fee. Seller shall pay at Closing up to an aggregate amount of $75,000 of DIP Lender's costs including DIP Lender's counsel fees associated with the Bankruptcy Case, which costs shall be paid out of the Bankruptcy Funding Commitment once approved by the Bankruptcy Court. Seller's counsel fees shall also be paid out of the Bankruptcy Funding Commitment once approved by the Bankruptcy Court. Subject to the preceding sentences and Section 15.14 below, each party shall be responsible for its own attorneys' fees. The parties anticipate that, pursuant to Section 1146(a) of the Bankruptcy Code, the transfer of the Property and recordation of the Deed will not be subject to transfer or recordation taxes.

   9.5.2 <u>Real Estate Taxes</u>.  Real estate and ad valorem taxes for the year of Closing will be prorated between Seller and Purchaser as of Closing Date on the basis of actual bills therefor, if available.  If such bills are not available, then the Parties shall escrow 105% of the most currently available tax bills and, thereafter, promptly re-prorated upon the availability of actual bills for the period.  All rebates or reductions in taxes received subsequent to Closing, net of costs of obtaining the same, shall be prorated as of the Closing, when received.

   9.5.3 <u>Utilities</u>.  Water, sewer, natural gas, electric and other utility charges shall be prorated as of the Closing Date.  If consumption of any of the foregoing is measured by meter, Seller shall, prior to the Closing Date, obtain a final reading of each such meter and a final bill as of the Closing Date.  If there is no such meter then the charges therefor shall be adjusted at the Closing Date on the basis of the charges of the prior period for which such bills were issued and shall be further adjusted between the parties when the bills for the correct period are issued. Seller and Purchaser shall cooperate to cause the transfer of utility accounts from Seller to Purchaser.  Seller shall be entitled to retain any utility security deposits to be refunded.  At Closing, Purchaser shall post substitute utility security deposits to replace those previously paid by Seller or, if the utility provider will not refund such deposits to Seller, Seller shall be reimbursed therefor by Purchaser at Closing if the utility provider in fact transfers such deposits to Purchaser.

   9.5.4 <u>Insurance Policies</u>.  Premiums on insurance policies will not be adjusted. As of the Closing Date, Seller will terminate its insurance coverage and Purchaser will effect its own insurance coverage.

   9.5.5 <u>Other Income and Expenses</u>.  All other income and operating expenses for or pertaining to the Property will be prorated as of the Closing Date.

   9.5.6 <u>Intentionally Omitted.</u>

   9.5.7 <u>Post-Closing Adjustment</u>.  Except as expressly set forth in Section 9.5.2, all adjustments for items to be prorated pursuant to Section 9.5 shall be completed and paid within thirty (30) days after the Closing Date or as soon as practicable thereafter.

   9.5.8 <u>Survival</u>.  The provisions of this Section 9.5 shall survive Closing.

4842-3765-2569.v10

10.    RISK OF LOSS, DAMAGE, CONDEMNATION.

10.1    Risk of Loss.  Risk of loss for damage to the Property, or any part thereof, by fire or other casualty from the Effective Date through the Closing Date will be on Seller, except as otherwise provided in Article 5, and except for any liabilities caused by Purchaser, its agents, representatives, invitees, employees or contractors.

10.2    Damage.  If, prior to the Closing, any portion of the Property is damaged by fire or any other cause whatsoever, Seller shall promptly give Purchaser written notice of such damage.

10.2.1    Minor Damage.  If the cost for repairing such damage is One Hundred Thousand Dollars ($100,000.00) or less (as determined by Seller's independent insurer) and such damage materially increases the cost of redeveloping the Property, then Purchaser shall have the right at Closing to receive the amount of the deductible plus all insurance proceeds received by Seller as a result of such loss, or an assignment of Seller's rights to such insurance proceeds, and this Agreement shall continue in full force and effect with no reduction in the Purchase Price and Seller shall have no further liability or obligation to repair such damage or to replace the Property.

10.2.2    Major Damage.  If the cost for repairing such damage is greater than One Hundred Thousand Dollars ($100,000.00) (as determined by Seller's independent insurer) and such damage materially increases the cost of redeveloping the Property, then Purchaser shall have the option, exercisable by written notice delivered to Seller within five (5) business days after Seller's notice of damage to Purchaser, either (i) to receive the amount of the deductible plus all insurance proceeds received by Seller as a result of such loss, or an assignment of Seller's rights to such insurance proceeds, and this Agreement shall continue in full force and effect with no reduction in the Purchase Price and Seller shall have no further liability or obligation to repair such damage or to replace the Property, or (ii) to terminate this Agreement. If Purchaser elects to terminate this Agreement, Purchaser give notice to Seller thereof, the Deposit shall be returned to Purchaser, and thereafter neither party will have any further rights or obligations hereunder, except for any obligations that expressly survive termination.  .

10.3    Condemnation.  In the event that any condemnation proceedings are instituted, or notice of intent to condemn is given, prior to the Closing and such condemnation or notice of intent to condemn materially impairs the use of the Property as contemplated by Purchaser, then Purchaser may elect to either: (a) cancel this Agreement and receive return of the Deposit; or (b) proceed to Closing without reduction of the Purchase Price, and the right to collect any condemnation award or compensation for such condemnation shall be assigned by Seller to Purchaser at Closing.

11.    REMEDIES AND ADDITIONAL COVENANTS.

11.1    Seller Default.  In the event Seller breaches any of its representations or warranties (other than breaches of representations or warranties resulting from conditions or events outside of Seller's reasonable control) under this Agreement or the Note, or fails to perform any of its covenants in any material respect under this Agreement or the Note, and such

4842-3765-2569.v10

breach or failure shall continue for a period of ten (10) Business Days after notice thereof from Purchaser, then Purchaser's sole and exclusive remedies shall be either (a) to file an action to obtain specific performance of Seller's obligation to deliver the Property and Property Information described in Article 4, or (b) to terminate this Agreement by giving written notice thereof to Seller prior to or at the Closing, in which event the Deposit and all funds advanced by Purchaser to Seller under the Note shall be returned to Purchaser plus accrued but unpaid interest as provided under the Note, and, after the return to Purchaser of such funds, neither Seller nor Purchaser will have any further rights or obligations under this Agreement, except for any obligations that expressly survive termination.  In the event Seller sells the Property to a third party during the pendency of this Agreement outside the authorization of the Bankruptcy Court, Purchaser shall be entitled to any and all remedies available under law and equity.

      11.2   <u>Purchaser Default</u>.  The parties acknowledge and agree that Seller should be entitled to compensation for any detriment suffered if Purchaser breaches any of its representations or warranties or fails to perform any of its covenants in any material respect but agree that it would be extremely difficult to ascertain the extent of the actual detriment Seller would suffer as a result of such breach and/or failure.  Consequently, if Purchaser fails to close and such breach, failure or other default shall continue for a period of ten (10) Business Days after notice thereof from Seller (it being agreed, however, that such notice and cure period shall be five (5) Business Days with respect to Purchaser's obligations to close) then Seller shall be entitled to terminate this Agreement by giving written notice thereof to Purchaser prior to or at the Closing, in which event the Deposit shall be paid to Seller as fixed, agreed and liquidated damages, and as Seller's sole and exclusive remedy, and, after the payment of the Deposit to Seller, neither Seller nor Purchaser will have any further rights or obligations under this Agreement, except for any obligations that expressly survive termination.  In no event whatsoever shall Seller be entitled to any damages, rights or remedies against Purchaser as a result of any default of Purchaser hereunder, other than as specifically set forth in this Section 11.2 and Article 12 below.

      11.3   <u>Delivery of Materials</u>.  Notwithstanding anything contained in this Agreement to the contrary, if this Agreement is terminated for any reason whatsoever, then Purchaser shall promptly deliver to Seller all Property Information provided to Purchaser by Seller, including copies thereof in any form whatsoever, including electronic form, along with any and all tests and studies of the Property performed by or on behalf of Purchaser pursuant to Article 5.  If Seller so requests, Purchaser shall execute and deliver to Seller an assignment agreement assigning, to the extent assignable, all of Purchaser's right, title, and interest in and to such tests and studies, free and clear of all liens and claims for payment.  The obligations of Purchaser under this Section 11.3 shall survive any termination of this Agreement.

      11.4   <u>Seller's Post-Closing Liability</u>.  Notwithstanding anything contained in this Agreement to the contrary, Seller shall not have any liability to Purchaser under this Agreement from and after the Closing Date. Any such liabilities of Seller to Purchaser shall be merged into the Sale Order.

4842-3765-2569.v10

12.    BROKERAGE COMMISSION.

     12.1    Broker.  Seller hereby represents and warrants to Purchaser that Seller has not engaged or entered into any agreement with any real estate broker in connection with this transaction except for Transwestern Carey Winston, L.L.C. d/b/a Transwestern ("**Broker**"). Seller will be solely responsible for the payment of any commission due to Broker in accordance with the provisions of a separate written agreement between Seller and Broker.  Purchaser hereby represents and warrants to Seller that Purchaser has not engaged or entered into any agreement with any real estate broker in connection with this transaction.

     12.2    Indemnity.  Each party hereby indemnifies and agrees to hold the other party harmless from any loss, liability, damage, cost, or expense (including, without limitation, reasonable attorneys' fees) paid or incurred by the other party by reason of a breach of the representation and warranty made by such party under this Article 12.  Notwithstanding anything to the contrary contained in this Agreement, the indemnities set forth in this Section 12.2 shall survive the Closing.

13.    NOTICES.

     13.1    Written Notice.  All notices, demands and requests which may be given or which are required to be given by either party to the other party under this Agreement must be in writing.

     13.2    Method of Transmittal.  All notices, demands, requests or other communications required or permitted to be given hereunder must be sent (i) by United States certified mail, postage fully prepaid, return receipt requested, (ii) by hand delivery, (iii) by Federal Express or a similar nationally recognized overnight courier service, or (iv) by facsimile with both telephonic confirmation and a confirmation copy delivered by another method set forth in this Section.  All such notices, demands, requests or other communications shall be deemed to have been given for all purposes of this Agreement upon the date of receipt or refusal, except that whenever under this Agreement a notice is either received on a day which is not a Business Day or is required to be delivered on or before a specific day which is not a Business Day, the day of receipt or required delivery shall automatically be extended to the next Business Day.

     13.3    Addresses.  The addresses for proper notice under this Agreement are as follows:

Purchaser:

AHH16 Development, LLC
178 Route 59, Suite 306
Monsey, N.Y. 10952
Attn:  Jonathan Hook

Seller:

The Condominium Association of the Lynnhill Condominium
c/o **Robin Williams, Executive Vice President, Director**
Transwestern
6700 Rockledge Drive
Suite 500-A
Bethesda, MD 20817

15

with a copy to:                          with a copy to:

Shulman Rogers                           Pillsbury Winthrop Shaw Pittman LLP
12505 Park Potomac Avenue                1200 17th Street, NW
Potomac, MD 20854                        Washington, DC 20036
Attn: Michael J. Lichtenstein            Attn: Patrick J. Potter


Escrow Agent:

Madison Title Agency
1125 Ocean Avenue
Lakewood, NJ 08701
Attn: Hindy Wosner

Either party may from time to time by written notice to the other party designate a different address for notices within the United States of America.

14.    ASSIGNMENT.

Neither party shall have the right to assign this Agreement without the prior written consent of the other, which consent may be granted or withheld in the sole and absolute discretion of the party whose consent has been requested; provided, however, that at Closing Purchaser shall have the right to assign this Agreement to any entity that controls, is controlled by or is under common control with, Purchaser. Any attempted assignment of this Agreement in violation of the foregoing sentence shall, at the option of the non-assigning party, be void and without force or effect.

15.    MISCELLANEOUS.

15.1    Entire Agreement. This Agreement embodies the entire agreement between the parties and cannot be varied except by the written agreement of the parties and supersedes all prior agreements and undertakings.

15.2    Modifications. This Agreement may not be modified except by the written agreement of the parties.

15.3    Gender and Number. Words of any gender used in this Agreement will be construed to include any other gender and words in the singular number will be construed to include the plural, and vice versa, unless the context requires otherwise.

15.4    Captions. The captions used in connection with the Articles, Sections and Subsections of this Agreement are for convenience only and will not be deemed to expand or limit the meaning of the language of this Agreement.

15.5    Successors and Assigns. This Agreement will be binding upon and inure to the benefit of the parties hereto and, subject to Article 14, their respective legal representatives, successors and assigns.

4842-3765-2569.v10

15.6    Controlling Law.  This Agreement will be construed under, governed by and enforced in accordance with the laws of the state where the Property is located.

15.7    Exhibits.  All exhibits, attachments, annexed instruments and addenda referred to herein will be considered a part hereof for all purposes with the same force and effect as if copied verbatim herein.

15.8    No Rule of Construction.  Seller and Purchaser have each been represented by counsel in the negotiations and preparation of this Agreement; therefore, this Agreement will be deemed to be drafted by both Seller and Purchaser, and no rule of construction will be invoked respecting the authorship of this Agreement.

15.9    Severability.  In the event any one or more of the provisions contained in this Agreement (except the provisions relating to Seller's obligations to convey the Property and Purchaser's obligation to pay the Purchase Price, the invalidity of either of which shall cause this Agreement to be null and void) are held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability will not affect any other provisions hereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had not been contained herein, provided, however, that the parties hereto shall endeavor in good faith to rewrite the affected provision to make it (i) valid and (ii) consistent with the intent of the original provision.

15.10    Time of Essence.  Time is important to both Seller and Purchaser in the performance of this Agreement, and both parties have agreed that TIME IS OF THE ESSENCE with respect to any date set out in this Agreement.

15.11    Business Days.  "**Business Day**" means any day on which business is generally transacted by banks in the jurisdiction in which the Property is situated.  If the final date of any period which is set out in any paragraph of this Agreement falls upon a day which is not a Business Day, then, and in such event, the time of such period will be extended to the next Business Day.

15.12    No Memorandum; Confidentiality.  Purchaser and Seller agree not to record this Agreement or any memorandum hereof.  Purchaser and Seller agree to hold this Agreement, the terms hereof and all information related to this transaction in strict confidence, and will not disclose such information to any person other than directors, officers, employees and agents of each, as well as to consultants, banks or other third parties working with Seller or Purchaser in connection with the transaction, in each case who need to know such information for the purpose of consummating this transaction.  This prohibition will not be applicable to disclosure of information required by applicable law, rule or regulation and will survive the termination of this Agreement for one (1) year, but will not survive the Closing.

15.13    Press Releases.  Prior to Closing, any release to the public of information with respect to the matters set forth in this Agreement will be made only in the form approved by Purchaser and Seller and their respective counsel.

15.14    Attorneys' Fees and Costs.  In the event either party is required to resort to litigation to enforce its rights under this Agreement, the prevailing party in such litigation will be

4842-3765-2569.v10

entitled to collect from the other party all costs, expenses and attorneys' fees incurred in connection with such action.

15.15   <u>Counterparts and Expiration of Offer</u>.  This Agreement may be executed in multiple counterparts which shall together constitute a single document.  However, this Agreement shall not be effective unless and until all counterpart signatures have been obtained. An unsigned draft of this Agreement shall not be considered an offer by either party.

15.16   <u>Waiver of Jury Trial</u>.  EACH PARTY HEREBY WAIVES TRIAL BY JURY IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM BROUGHT BY EITHER PARTY IN CONNECTION WITH ANY MATTER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE RELATIONSHIP OF SELLER AND PURCHASER HEREUNDER, PURCHASER'S OWNERSHIP OR USE OF THE PROPERTY, AND/OR ANY CLAIMS OF INJURY OR DAMAGE.

15.17   <u>Anti-Money Laundering</u>.  Purchaser hereby represents its compliance with all applicable anti-money laundering laws, including, without limitation, the USA Patriot Act, and the laws administered by the United States Treasury Department's Office of Foreign Assets Control, including, without limitation, Executive Order 13224 (the "**Executive Order**"). Purchaser further represents (a) that it is not, and it is not owned or controlled directly or indirectly by any person or entity, on the SDN List published by the United States Treasury Department's Office of Foreign Assets Control and (b) that it is not a person otherwise identified by government or legal authority as a person with whom a U.S. Person is prohibited from transacting business.  As of the date hereof, a list of such designations and the text of the Executive Order are published under the internet website address www.ustreas.gov/offices/enforcement/ofac.  Purchaser covenants and agrees to deliver to Seller any certification or other evidence requested from time to time by Seller in its reasonable discretion confirming Purchaser's compliance with this Section 15.17.  Notwithstanding any other provision of this Agreement, the provisions of this Section 15.17 shall survive Closing.

15.18   <u>Prince George's County Disclosure</u>.  Seller certifies that Seller has no knowledge of any published preliminary or adopted land use plan (or adopted Zoning Map Amendment) which may result in condemnation or taking of any part of Seller's property.  Purchaser acknowledges that Purchaser is aware that information relative to (1) government plans for land use, roads, highways, parks, transportation, etc., and (2) rezoning is available for inspection at the County Administration Building, Upper Marlboro, Maryland, at www.PGAtlas.com, and http://www.pgplanning.org/Planning_Home.  Purchaser further acknowledges, and is strongly encouraged to take advantage of its opportunity to examine the above referenced information and any other information pertaining to the property that is relevant to Purchaser prior to signing or entering into the contract of sale.

[signatures follow on next page]

IN WITNESS WHEREOF, the parties have executed this Purchase and Sale Agreement as of the date first written above.

**SELLER**:

THE CONDOMINIUM ASSOCIATION OF
THE LYNNHILL CONDOMINIUM, a
Maryland condominium association

By: _____
Name: Stanley Briscoe
Title: Acting President


**PURCHASER:**

AHH16 DEVELOPMENT, LLC,
a Maryland limited liability company


By: _____
Name: _____
Title: _____

19

IN WITNESS WHEREOF, the parties have executed this Purchase and Sale Agreement as of the date first written above.

**SELLER**:

THE CONDOMINIUM ASSOCIATION OF THE LYNNHILL CONDOMINIUM, a Maryland condominium association

By: _____

Name: _____

Title: _____

**PURCHASER:**

AHH16 DEVELOPMENT, LLC,
a Maryland limited liability company

By: _____

Name: _____Jonathan Hook_____

Title: _____Managing Member_____

4842-3765-2569.v10

Schedule of Exhibits and Schedules:

Exhibit A – Legal Description
Exhibit B – Escrow Agreement
Exhibit C – Promissory Note
Exhibit D – Form of Sale Order
Exhibit E – Form of Certificate of Non-Foreign Status
Exhibit F – Form of Quitclaim Deed
Exhibit G – Form of Title Affidavit

4842-3765-2569.v9

## EXHIBIT A

## LEGAL DESCRIPTION

Parcel lettered "A" in the subdivision known as "LYNNHILL GARDENS" as per plat recorded in Plat Book WWW-56, Plat No. 87, among the Land Record of Prince George's County, Maryland.

A-1

## **EXHIBIT B**

## **ESCROW AGREEMENT**

THIS ESCROW AGREEMENT (this "Agreement") is made and entered into this ___ day of _____, 2018, by and among THE CONDOMINIUM ASSOCIATION OF THE LYNNHILL CONDOMINIUM, a Maryland condominium association ("Seller"), and AHH16 DEVELOPMENT, LLC, a Maryland limited liability company ("Purchaser"), and [_____], a [_____] ("Escrow Agent").  Reference is made to that certain Purchase and Sale Agreement dated as of _____ ___, 2018 (the "Contract"), between Seller and Purchaser.  The defined terms used in this Agreement shall have the meanings set forth in the Contract.

1.  Purchaser and Seller have agreed to select Escrow Agent to serve as escrow agent with respect to the Deposit to be made by Purchaser pursuant to the Contract.  The purpose of this Agreement is to prescribe instructions governing the services of Escrow Agent with respect to the Deposit and the Closing.

2.  Seller and Purchaser hereby engage Escrow Agent to serve as escrow agent with respect to the Deposit to be made by Purchaser pursuant to the terms of the Contract, a copy of which has been delivered to and received by Escrow Agent.  Escrow Agent hereby accepts such engagement.

3.  Escrow Agent acknowledges receipt of the Deposit and agrees to place the Deposit into a non-commingled interest-bearing escrow account at a federally-insured commercial bank and to notify Purchaser and Seller of the location and number of such interest-bearing account.  Interest shall be maintained in the escrow account as a part of the Deposit and credited to Purchaser for tax purposes.  Purchaser's Federal Taxpayer Identification Number is _____.

4.  Escrow Agent shall disburse the Deposit and any interest earned thereon in accordance with the terms and conditions of the Contract.  At the time of the Closing, if any, if the Deposit has not been disbursed previously in accordance with the Contract, then Escrow Agent shall disburse the Deposit and interest thereon to Seller to be credited against the Purchase Price.

5.  In the event that there is a dispute regarding the disbursement or disposition of the Deposit or the interest earned thereon, or in the event Escrow Agent shall receive conflicting written demands or instructions with respect thereto, then Escrow Agent shall withhold such disbursement or disposition until notified by both parties that such dispute is resolved or Escrow Agent may file a suit of interpleader at the cost and expense of Seller and Purchaser.

6.  Escrow Agent shall not be liable for any damage, liability or loss arising out of or in connection with the services rendered by Escrow Agent pursuant to this Agreement unless the same results from the negligence, gross negligence, or willful misconduct of Escrow Agent.

7.  Copies of all notices given by any party hereunder shall be delivered in person or mailed, postage prepaid, to all other parties hereto, to the addresses set forth in the Contract.

4842-3765-2569.v10

8.   The instructions contained herein may not be modified, amended or altered in any way except by a writing (which may be in counterpart copies) signed by Seller, Purchaser and Escrow Agent.

9.   Purchaser and Seller reserve the right, at any time and from time to time, to substitute a new escrow agent in place of Escrow Agent.

10. This Agreement will be construed under, governed by and enforced in accordance with the laws of the state where the Property is located.

11. EACH PARTY HEREBY WAIVES TRIAL BY JURY IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM BROUGHT BY EITHER PARTY IN CONNECTION WITH ANY MATTER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT AND/OR THE RELATIONSHIP OF SELLER AND PURCHASER UNDER THE CONTRACT.

12. ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST BORROWER ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE INSTITUTED IN A FEDERAL OR STATE COURT IN THE STATE WHERE THE PROPERTY IS LOCATED, AND, SUBJECT TO EACH PARTY'S RIGHT TO SEEK TO REMOVE ANY SUCH ACTION TO A FEDERAL COURT IN THE STATE WHERE THE PROPERTY IS LOCATED, EACH PARTY WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING AND EACH PARTY HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING.

13. This Agreement is intended solely to supplement and implement the provisions of the Contract and is not intended to modify, amend or vary any of the rights or obligations of Purchaser or Seller under the Contract.

14. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument; provided, however, in no event shall this Agreement be effective unless and until signed by all parties hereto.

B-2

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

**SELLER**:

THE CONDOMINIUM ASSOCIATION OF THE LYNNHILL CONDOMINIUM, a Maryland condominium association

By: _____
Name: _____
Title: _____

**PURCHASER:**

AHH16 DEVELOPMENT, LLC,
a Maryland limited liability company

By: _____
Name: _____
Title: _____

**ESCROW AGENT:**

[_____]

By: _____
Name: _____
Title: _____

4842-3765-2569.v10

**EXHIBIT C**

**PROMISSORY NOTE**

[to be attached]

C-1

4842-3765-2569.v10

# PROMISSORY NOTE

$400,000.00                                        Effective Date: December 18, 2017

FOR VALUE RECEIVED, the Condominium Association of the Lynnhill Condominium, an unincorporated condominium association existing under the laws of the State of Maryland ("**Borrower**"), promises to pay to the order of AHH16 Development, LLC, a Maryland limited liability company ("**Lender**") (Lender or any other holder of this Note is referred to as "**Holder**"), the principal sum of $400,000.00 together with interest and attorney's fees as set forth below (the "**Indebtedness**"), as set forth pursuant to the terms of this Note.

**1.      Defined Terms.**  Unless otherwise indicated herein, defined terms in this Promissory Note shall have the same meanings ascribed to them in that certain Commitment Letter dated December 18, 2017, as executed by Borrower and Lender (the "**Commitment Letter**").

"**Business Day**" means any day other than a Saturday, a Sunday or any other day on which Lender or the national banking associations are not open for business.

"**Interest Rate**" means the annual interest rate of six percent (6%).

"**Maturity Date**" means the earliest of (a) January 29, 2018 (unless the indebtedness under this Note has been rolled up into the DIP loans as provided in the Commitment Letter), (b) the date on which a third party takes title to the Property, or (c) the date on which the Commitment Letter by and between Lender and Borrower is terminated.

"**Note**" means this Promissory Note.

"**Property**" means that certain parcel of land described in Exhibit A of the Security Instrument, together with all of the units or former units of the Lynnhill Condominium, improvements, and common elements thereon.

"**Security Instrument**" means the deed of trust effective as of the effective date of this Note, from Borrower to or for the benefit of Lender and securing this Note, as amended, modified or supplemented from time to time.

**2.      Payment**. Borrower and Lender acknowledge and agree that this Note is made by Borrower in connection with Lender's proposed purchase of the Property pursuant to the following terms:

(i)      Interest will accrue on the outstanding principal balance of this Note at the Interest Rate, but shall not be payable until the Maturity Date.

(ii)     Interest under this Note will be computed, payable and allocated on the basis of a 360-day year consisting of twelve 30-day months.

(iii)   The Indebtedness, including all principal and interest, shall be due and payable by Borrower on the Maturity Date.

**3.      Address for Payment.** All payments due under this Note will be payable by wire transfer to Mark Nussbaum at:

| | |
|---|---|
| Bank Name: | Signature Bank |
| | 565 5th Avenue |
| | New York, NY 10017 |
| Account Name: | Mark J. Nussbaum & Associates, PLLC |
| | Attorney Escrow Account IOLA |
| Account Address: | 225 Broadway – 39th Fl., NY NY 10007 |
| Routing Number: | 026013576 |
| Account Number: | 1502750697 |
| Swift Number: | SIGNUS 33 |

or such other place as may be designated by written notice to Borrower from or on behalf of Holder.

**4.      Waivers.**

(i)    Borrower and all other persons who sign, guarantee, or endorse this Note, to the full extent allowed by law, waive notice of maturity, presentment, demand for payment, protest and notice of protest, and notice of nonpayment and dishonor of this Note.

(ii)   Borrower waives the right to any stay of execution and the benefit of all exemption laws, including the homestead exemption or any similar exemption, now or in effect after the date of this Note to which Borrower may be entitled.

**5.      Default.** The failure to pay any part of the principal or interest when due on this Note, including without limitation on the Maturity Date; or to fully perform any covenant, obligation or warranty on this or on any other liability to the Lender by the undersigned beyond any applicable notice and cure period; or the undersigned shall fail to furnish within thirty (30) days following a written request, information and documentation to the Lender sufficient to verify the identity of the undersigned as required under the USA Patriot Act; or in the event of default pursuant to the Security Instrument or any other obligation of any of the undersigned in favor of the Lender beyond any applicable notice and cure period, if any; or in the event the undersigned shall terminate its existence, allow the appointment of a receiver for any part of its property, make an assignment for the benefit of creditors, or should a proceeding under bankruptcy or insolvency laws be initiated by or against the undersigned and the same is not dismissed within 30 days (except in connection with the Bankruptcy Case); or if there is an attachment, execution, or other judicial seizure of all or any material portion of the Borrower's assets, including an action or proceeding to seize any

funds on deposit with the Lender, and such seizure is not discharged within 20 days; or if final judgment for the payment of money shall be rendered against the Borrower which is not covered by insurance and shall remain undischarged for a period of 30 days unless such judgment or execution thereon is effectively stayed; then any one of the same shall be a material default hereunder and this Note and other debts due the Lender by undersigned shall immediately become due and payable without notice, at the option of the Lender. From and after any event of default hereunder, interest shall accrue on the sum of the principal balance and accrued interest then outstanding at the Interest Rate plus 5% per annum ("**Default Rate**"), provided that such rate shall not exceed at any time the highest rate of interest permitted by the laws of the State of Maryland; and further provided that such rate shall apply after judgment. In the event of any default, the then remaining unpaid principal amount and accrued but unpaid interest then outstanding shall bear interest at the Default Rate called for hereunder until such principal and interest have been paid in full. In addition, upon default, the Lender may pursue its full legal remedies at law or equity, and the balance due hereunder may be charged against any obligation of the Lender to the Borrower. **Lender shall not be obligated to accept any check, money order, or other payment instrument marked "payment in full" on any disputed amount due hereunder, and Lender expressly reserves the right to reject all such payment instruments. Borrower agrees that tender of its check or other payment instrument so marked will not satisfy or discharge its obligation under this Note, disputed or otherwise, even if such check or payment instrument is inadvertently processed by Lender unless in fact such payment is in fact sufficient to pay the amount due hereunder.**

6. **Confession Of Judgment.** Upon the occurrence of any default hereunder, the undersigned authorize any attorney admitted to practice before any court of record in the United States to appear on behalf of the undersigned in any court having jurisdiction in one or more proceedings, or before any clerk thereof or prothonotary or other court official, and to CONFESS JUDGMENT AGAINST THE UNDERSIGNED, WITHOUT PRIOR NOTICE OR OPPORTUNITY OF THE UNDERSIGNED FOR PRIOR HEARING, in favor of the Lender for the Indebtedness plus court costs and attorney's fees of 15% of the total amount then due hereunder. The undersigned waives the benefit of any and every statute, ordinance or rule of court which may be lawfully waived conferring upon the undersigned any right or privilege of exemption, homestead rights, appeal, stay of execution or supplementary proceedings, inquisition, extension upon any levy on real estate or personal property, and any other relief from enforcement or immediate enforcement of a judgment or related proceedings on a judgment. The authority and power to appear for and enter judgment against the undersigned shall not be exhausted by one or more exercises thereof, or by any imperfect exercise thereof, and shall not be extinguished by any judgment entered pursuant thereto; such authority and power may be exercised on one or more occasions, from time to time, in the same or different jurisdictions as often as the Lender shall deem necessary or advisable, for all of which the Note shall be sufficient authority.

7. **Costs and Expenses.** Subject to any limits under applicable law, Borrower will reimburse the Holder for all costs and expenses, including attorneys' fees, which Holder incurs, after default or Maturity, in collecting on this Note.

**8.     Forbearance.** Holder may delay or forego enforcing any of Holder's rights or remedies under this Note without losing any of them. No single or partial exercise of any power or right by Holder will prevent Holder's exercise of any further power or right. No waiver or forbearance of any power or right is valid against Holder unless it is stated in writing and is signed by Holder, and it will apply only to the extent set out in such writing.

**9.     Severability.** This Note is binding on Borrower and inures to the benefit of Holder and its respective successors in interest and assigns. The invalidity or unenforceability of any provision of this Note will not affect the validity or enforceability of any other provision, and all other provisions will remain in full force and effect.

**10.     Modification.** This Note may not be modified or canceled orally, but only by an agreement in writing signed by the parties.

**11.     Commercial Purpose.** Borrower represents that it is incurring the Indebtedness solely for the purpose of carrying on a business or commercial enterprise, and not for personal, family, household, or agricultural purposes.

**12.     Consent to Jurisdiction and Venue.** Borrower acknowledges and agrees that this Note will be deemed executed and delivered by Borrower in Prince George's County, Maryland. Borrower agrees that venue for any action under this Note may be in the United States District Court for the District of Maryland or other or state court sitting in Prince George's County, Maryland, and waives any other venue to which it might be entitled by virtue of domicile, habitual residence or otherwise. However, nothing in this Note is intended to limit any right that Holder may have to bring any suit, action or proceeding relating to matters arising under this Note in any court of any other jurisdiction. Borrower agrees that the laws of the State of Maryland govern this Note without giving effect to conflicts of laws provisions.

**13.     Captions.** The captions of the Sections of this Note are for convenience only and will be disregarded in construing this Note.

**14.     Entire Agreement.** This writing represents the entire agreement of the parties and is intended as a complete and exclusive statement of the terms of this Note.

**15.     WAIVER OF TRIAL BY JURY. BORROWER AND HOLDER EACH (a) AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS NOTE OR THE RELATIONSHIP BETWEEN THE PARTIES AS LENDER AND BORROWER THAT IS TRIABLE OF RIGHT BY A JURY AND (b) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.**

[the remainder of this page is intentionally left blank]

IN WITNESS WHEREOF, Borrower has signed and delivered this Note under seal or has caused this Note to be signed and delivered under seal by its duly authorized representative.

CONDOMINIUM ASSOCIATION OF
THE LYNNHILL CONDOMINIUM, an
unincorporated condominium association
existing under the laws of the State of
Maryland

By: _Stanley Briscoe_

Name: _____

Title: _Acting President of the Board of Directors_

4832-7640-6872.v3

**<u>EXHIBIT D</u>**

**FORM OF SALE ORDER**

[to be attached]

4842-3765-2569.v10

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**Greenbelt Division**

| | |
|---|---|
| In re: | |
| THE CONDOMINIUM ASSOCIATION OF THE LYNNHILL CONDOMINIUM, | Case No. 18-10334 |
| | Chapter 11 |
| Debtor.[1] | |

**ORDER (I) FINALLY APPROVING DISCLOSURE STATEMENT,**
**(II) CONFIRMING DEBTOR'S CHAPTER 11 PLAN AND (III) AUTHORIZING**
**THE SALE OF "THE LYNNHILL CONDOMINIUM"**
**FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS**

Upon further consideration of the Condominium Association of the Lynnhill Condominium's (the "Debtor") Disclosure Statement and upon consideration of the Debtor's Chapter 11 Plan dated January 10, 2018 (the "Plan");[2] and the Court having held a hearing (the "Confirmation Hearing") on February 13, 2018, to consider final approval of the Disclosure Statement and confirmation of the Plan; and upon the record of the Confirmation Hearing and of this entire chapter 11 case, and the evidence proffered and the arguments of counsel at the Confirmation Hearing, and after due deliberation and consideration; the Court makes the following findings and conclusions, and orders as follows:

---

[1]  The Debtor's federal identification number is 52-0993760.

[2]  Capitalized terms used but not defined in this Order have the meanings given such terms in the Plan.

1.     Pursuant to 28 U.S.C. §§ 157 and 1334, the Court has jurisdiction to hear and rule on the Debtor's request to grant final approval of the Disclosure Statement and to confirm the Plan, grant the relief requested in and in connection with the Plan, and enter this Order confirming the Plan (collectively, the "Confirmation Request").  Venue is proper in this District under 28 U.S.C. § 1408.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought include sections 105, 363, 365, 1129 and 1146(a) of the U.S. Bankruptcy Code ("Bankruptcy Code") and Rules 2002, 3016–3020, 6004, 9006, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2.     Proper, timely and adequate notice of the Confirmation Request, the Confirmation Hearing, and the request for entry of this Order has been provided in accordance with section 102(1) of the Bankruptcy Code and Rules 2002, 6004, and 9006 of the Bankruptcy Rules, and no other or further notice is required.

3.     On January 10, 2018, the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code.  The Debtor continues to manage and preserve its property as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or committee has been appointed in this chapter 11 case.

4.     On January [12], 2018, the Court entered an order (the "DS Order") conditionally approved the Disclosure Statement and setting the hearing for final approval of the Disclosure Statement for February [13], 2018 at 10:00 a.m. (the "Final DS Hearing").  Subsequently, Holders of Claims were sent and cast ballots on the Plan.

5.     Pursuant to the DS Order, the Court also set February [13], 2018 at 10:00 a.m. as the date and time for the Confirmation Hearing on the Plan.

4839-3972-0794.v6

6.      The certificate of service filed with the Court on January [__], 2018 (Doc. __) reflects that the Plan and Disclosure Statement, together with notice of the Confirmation Hearing, Final DS Hearing and the deadlines for filing objections were served on all parties in interest, including all known creditors, Former Residents, Unit Lienholders and persons having filed a notice of appearance and request for documents.

7.      Additionally, the certificate of publication of notice filed with the Court on January [__], 2018 (Doc. __) reflects that the Debtor published notice of the Confirmation Hearing, Final DS Hearing and the Sale in the form approved by the Court.  *See* Doc. __.  The Court finds that the Debtor provided adequate notice and that no other or further notice is required to grant and enter this Order.

8.      No objection has been filed to the final approval of the Disclosure Statement or confirmation of the Plan, and no party that appeared at the Confirmation Hearing objected to the Plan.

9.      The Disclosure Statement meets the standards for final approval under the Bankruptcy Code, and the Plan meets the standards for confirmation under section 1129(a) of the Bankruptcy Code.

10.      The Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code, as mandated by, among other sections, section 1129(a)(1) of the Bankruptcy Code.

11.      The Debtor, as the proponent of the Disclosure Statement and the Plan, has complied with the applicable provisions of the Bankruptcy Code, as mandated by, among other sections, section 1129(a)(2) of the Bankruptcy Code.

3

12.     The Disclosure Statement and the Plan have been proposed in good faith and not by any means forbidden by law as required by section 1129(a)(3) of the Bankruptcy Code.

13.     Any payment made or to be made by the Debtor or any person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with this chapter 11 case, or in connection with the Plan and incident to this chapter 11 case, has been approved by, or is subject to the approval of, the Court as reasonable, as required by section 1129(a)(4) of the Bankruptcy Code.

14.     The Debtor, as the proponent of the Plan, has made the applicable disclosures required by section 1129(a)(5)(A) and (B) of the Bankruptcy Code and the subjects of such disclosures are consistent with the interest of the Debtor's creditors and public policy, as required by section 1129(a)(5)(A)(ii) of the Bankruptcy Code.

15.     Section 1129(a)(6) of the Bankruptcy Code is inapplicable to this chapter 11 case.

16.     The ballot tally was filed with the Court on February 12, 2018 (Doc. __).

17.     Under the Plan, all classes of Claims are impaired, except for Class 1.

18.     Considering only timely cast votes, Class [__] voted unanimously to accept the Plan, Class [__] voted to reject the Plan, and no votes were cast for Class [__].

19.     With respect to each impaired Class of Claims, each Holder of a Claim of such Class (i) has accept the Plan, or (ii) will receive payments in amounts that exceed those that such Holders would receive if the Debtor and its estate were liquidated under chapter 7, thereby satisfying section 1129(a)(7)(A) of the Bankruptcy Code.

20.     Except to the extent the Holder of a particular Claim has agreed to a different treatment, the Plan provides that the Holders of Claims of the kinds specified in sections

4

507(a)(2) and 507(a)(8) of the Bankruptcy Code will receive the treatment mandated by section 1129(a)(9) of the Bankruptcy Code.

21.    At least one impaired class of Claims has accepted the Plan, determined without including acceptance of the Plan by any insider, as required by section 1129(a)(10) of the Bankruptcy Code.

22.    Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor, and therefore section 1129(a)(11) of the Bankruptcy Code is satisfied.

23.    All fees due and payable under section 1930 of title 28 of the United States Code have been paid or will be paid pursuant to the Plan, as required by section 1129(a)(12) of the Bankruptcy Code.

24.    Section 1129(a)(13) of the Bankruptcy Code (addressing retiree benefits) is inapplicable to this chapter 11 case.

25.    Section 1129(a)(14) of the Bankruptcy Code (addressing domestic support obligations) is inapplicable to this chapter 11 case.

26.    Section 1129(a)(15) of the Bankruptcy Code (applicable where the debtor is an individual) is inapplicable to this chapter 11 case.

27.    Section 1129(a)(16) of the Bankruptcy Code (addressing transfers of property by a corporation or trust) is inapplicable to this chapter 11 case.

28.    [With respect to the Holders of Claims in Class [___] who rejected the Plan and Holders of Claims in Class [___] who did not vote, the Plan does not discriminate unfairly and is fair and equitable within the meaning of section 1129(b)(2)(B)(ii) of the Bankruptcy Code

5

because no holder of any junior Claim will receive or retain any property under the Plan on account of such junior Claim.][3]

29. The Debtor's decisions regarding assumption and rejection of executory contracts and unexpired leases are based on and within the Debtor's sound business judgment, and are in the best interests of the Debtor and its estate.

30. Pursuant to the applicable provisions of the Bankruptcy Code and other applicable law, including sections 105 and 1123 of the Bankruptcy Code and Rule 9019(a) of the Bankruptcy Rules, the settlements, releases, compromises, setoffs, waivers, discharges and injunctions set forth in the Plan (including without limitation in Article 9) are approved as integral parts of the Plan, and are hereby approved as fair, equitable, reasonable, and in the best interests of the Debtor, its estate and creditors.

31. The Court finds that the provisions and terms contained in the Plan are fair and reasonable, were negotiated as part of an arm's-length transaction, and are in the best interests of the Debtor, its estate and creditors.

32. All transfers, assignments, conveyances, and sales of real or personal property provided for in the Plan or this Order or undertaken to carry out the Plan, are essential to the confirmation and implementation of the Plan.

33. Confirmation of the Plan and the entry of this Order is consistent with (and in furtherance of) the Debtor's obligations under that certain *Amended Commitment Letter of AHH16 Development, LLC or its Designee to Be Purchaser of the Property and Post-Petition Secured Lender in Connection with Lynnhill Condominium Bankruptcy Case* dated December 18, 2017 (the "Commitment"), between the Debtor and the DIP Lender.

---

[3] To be used if there are rejecting or non-voting Classes.

4839-3972-0794.v6

**FURTHERMORE, IN CONNECTION WITH THE SALE OF THE PROPERTY, AS CONTEMPLATED BY THE PLAN:**

34.    Before the Court is the Debtor's request, to sell the real property and improvements thereon located at 3103 and 3107 Good Hope Avenue, Temple Hills, Maryland 20748 (the "Property") free and clear of all liens, encumbrances, rights and other interests (the "Sale Request") pursuant to the Plan, sections 105(a), 363, 1123, and 1129 of the Bankruptcy Code and Rules 2002, 6004, 9014 and 9019 of the Federal Rules of Bankruptcy Procedure.

35.    The Court finds that, on October 4, 2017, the Circuit Court for Prince George's County entered a judgment and order that, among other things, (i) found that by necessity under the circumstances, and as a practical matter (where the Property has been fully vacated, is uninsured, lacking in financial resources and a threat to the public and a burden to Prince George's County), the condominium regime for the Property is for all intents and purposes terminated; (ii) deemed the Debtor the fee simple absolute owner of the Property for the purpose of prosecuting and consummating a sale process for the Property; (iii) authorized the Debtor to conduct a sale process and convey fee simple absolute title, including all right, title and interest (regardless of holder) to the Property, through the chapter 11 bankruptcy process, and (iv) authorized the Debtor to engage professionals, including real estate brokers and advisors, to assist the Debtor in consummating a sale of the Property.  *See* Am. Findings of Facts, Conclusions of Law and Am. Judgment, *Consumer Prot. Div. Office of the Md. Attorney Gen. v. Lynnhill Condo. Dev., Inc.*, Case No. CAE16-40059 (Cir. Ct. Prince George's Cnty. Nov. 2, 2017), attached as **Exhibit 1**.

36.    The Court finds that due and proper notice of the Sale Request was provided to (i) the U.S. Trustee, (ii) counsel to Purchaser (defined below) and the DIP Lender, (iii) all parties list on the Debtor's Schedules as holding secured claims (*i.e.*, Schedule D), (iv) all parties who

7

expressed in writing to the Broker an interest in acquiring the Property, and who the Debtor and their representatives reasonably and in good faith determined potentially have the desire and financial wherewithal to effectuate the sale of the Property (the "Sale"), (v) all parties requesting notice pursuant to Rule 2002 and the Local Rules, and (vi) the parties listed on the Debtor's list of creditors holding the 20 largest unsecured claims.

37.     The Court finds that the Debtor provided proper, timely and adequate notice of the Sale in accordance with section 102(1) of the Bankruptcy Code and Rules 2002, 6004, and 9006 of the Bankruptcy Rules, and no other or further notice is required.

38.     The Court hereby determines that the relief sought in the Sale Request is in the best interests of the Debtor, its estate and creditors, and all parties in interest and that the legal and factual bases set forth in the Sale Request and at the Confirmation Hearing establish just cause for the relief granted herein.

39.     The Court has jurisdiction to consider the Sale Request pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

40.     The Broker marketed the Property fairly, reasonably, and in good faith.  After adequate marketing by the Broker, the highest and best price offered for the Property was the $13.2 million offer made by AHH16 Development, LLC ("Purchaser").   Time is of the essence in consummating the Sale and it is in the best interests of the Debtor and its estate to sell the Property pursuant to the Plan and the Purchase Agreement between the Debtor and Purchaser (as finally executed, and subject to amendments, if any, that may be negotiated by the Debtor and the Purchaser, the "Purchase Agreement").

4839-3972-0794.v6

41.     Upon closing of the Sale, the Property will be acquired by the Purchaser after adequate marketing, as the result of arm's-length negotiations and in good faith.

42.     Except as may be expressly set forth in the Purchase Agreement, the Property is being sold to the Purchaser on an "as is, where is" basis, without representations or warranties of any kind, nature or description.

43.     Reasonable notice of the Sale and a reasonable opportunity to object or be heard with respect to the Sale has been afforded to all creditors and interested parties.

44.     This Order and consummation of the Sale are supported by good business reasons and will serve the best interests of the Debtor, its estate, and creditors by maximizing the value received for the Property.

45.     The Purchase Agreement was negotiated, proposed, and entered into by the Purchaser without collusion, in good faith, and from an arm's-length bargaining position.  There is no insider relationship between the Purchaser or its affiliates and the Debtor.  The Debtor and Purchaser have not engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code.

46.     Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and as such is entitled to all of the protections afforded thereby, and otherwise has acted in good faith in all respects in connection with this chapter 11 case, in that: (i) Purchaser recognizes that the Debtor was free to deal with other parties interested in acquiring the Property; (ii) Purchaser agrees and understands that the Debtor was free to accept a higher and better offer for the Property; (iii) all payments to be made by the Purchaser and all agreements entered into between Purchaser and the Debtor in connection with the Sale have been disclosed; (iv) the negotiation and execution of the Purchase Agreement was in good faith and represents an arm's-length

4839-3972-0794.v6

transaction; and (v) the disclosure requirements required by any Local Rule or otherwise have been satisfied.

47.     The consideration to be paid by the Purchaser to the Debtor for the Property (i) is fair and reasonable; (ii) is the highest and best offer for the Property; and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act or any similar laws of any state or jurisdiction whose law applies to the Sale.

48.     The consummation of the Sale will be a legal, valid, and effective sale of the Property to the Purchaser and will vest the Purchaser with all right, title and interest (fee simple absolute) to the Property, including but not limited to all of the Debtor's and Former Residents' right, title, and interest in and to the Property, free and clear of all liens, encumbrances, rights and other interests in accordance with the applicable provisions of the Bankruptcy Code.

49.     All parties who did not object to the Sale Request and the relief requested in the Plan with respect to the Sale, or who withdrew their objections ("Non-Objectors"), are deemed to have consented to the Sale Request.  All objections by other parties to the Sale ("Objectors") are overruled and dismissed and shall not constitute a basis for: (a) interfering with or preventing the prompt closing of the Sale of the Property, or (b) affecting title to the Property.  All Non-Objectors, Objectors and other persons and entities are enjoined from (x) taking any actions to interfere with or delay the Sale pursuant to this Order and (y) taking any actions against the Purchaser, its assigns, its affiliates, or any agent of the foregoing or against the Property to recover any claim which such person or entity may have against the Property or the Debtor; and any such enjoined actions shall be (and shall be deemed to be) void and of no effect.

50.     Failure to sell the Property free and clear of liens, encumbrances and other interests would be substantially less beneficial to the Debtor, its estate and creditors.

**NOW, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED**, as of the date of this Order, that:

## INITIAL HOLDINGS

A.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this District under 28 U.S.C. § 1408.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

B.     The findings of the Court above and the conclusions of law stated herein shall constitute findings of fact and conclusions of law pursuant to Rule 7052 of the Bankruptcy Rules, made applicable herein pursuant to Rule 9014 of the Bankruptcy Rules.  To the extent any findings of fact shall be determined to be conclusions of law, it shall be so deemed, and vice versa.

C.     The Debtor, as the proponent of the Plan, has complied with section 1125 of the Bankruptcy Code with respect to the Plan.

D.     The Plan satisfies the requirements of sections 1122, 1123 and 1129 of the Bankruptcy Code.

E.     The Disclosure Statement is hereby approved on a final basis and the Plan is hereby confirmed.

## HOLDINGS REGARDING THE SALE REQUEST

F.     The Sale Request is granted in all respects.

G.     Upon confirmation, (a) the Property shall no longer maintain its status of a condominium (the condominium regime is extinguished to the extent not already so); (b) the

Property shall no longer be operated as a condominium; (c) the Property is hereby released from any condominium regime; (d) any and all condominium plans relating to the Property are hereby permanently abandoned; (e) title to the Property (including but not limited to all of the Residential Units) shall, to the extent not already accomplished, unify and vest in the Debtor in a unified fashion (*i.e.*, one title and one deed) for purposes of selling and conveying fee simple absolute ownership of the Property to the Purchaser at Closing in accordance with the Plan and the Purchase Agreement.  For the avoidance of doubt, title to the Property will henceforth be reflected in a single deed instrument, and the Debtor shall convey title to the entire Property to AHH pursuant to a single deed.

H.      The Debtor's sale, conveyance, and transfer of the Property is approved.  The Debtor is authorized to enter into and consummate the Purchase Agreement and all agreements contemplated thereunder, and execute any and all documents and take all actions necessary and appropriate to effectuate and consummate the Sale in consideration for the purchase price of $13.2 million (minus a credit for all amounts advanced and accrued under the DIP Loan and a $1 million credit for certain life, health, and safety requirements of Prince George's County in connection with rehabbing the Property), including selling, assigning and transferring to Purchaser all right, title, and interest in and to the Property.  Execution and consummation of the Purchase Agreement by the Debtor is hereby approved by the Court.  Closing of the Sale shall occur within fifteen (15) business days after entry of this Order, absent the Court issuing a separate order that stays this Order and bars the Debtor and AHH from closing on the Sale.

I.      The transfer of the Property by the Debtor to Purchaser is a legal, valid, and effective transfer and shall vest Purchaser with all right, title, and interest in the Property, free and clear of any and all liens, encumbrances, rights and other interests (including but not limited

12

to mortgages, security interests, pledges, interests, judgments, demand, encumbrances, restrictions or charges of any kind or nature, fixed or contingent, and any and all Claims) and any and all rights and claims under any bulk transfer statutes and related laws, whether arising by agreement, statute, or otherwise and whether arising before or after the commencement of this chapter 11 case, whether known or unknown, including liens, encumbrances and other interests of any of the creditors, vendors, employers, suppliers, or any other third party, if any.

J.    Any and all existing liens on the Property or the Residential Units shall attach to the Net Sale Proceeds or the Fractional Sale Proceeds, respectively, with the same priority, validity, force and effect as they now have against the Property or the Residential Units, respectively; *provided, however*, that the Debtor and other parties in interest retain the right to challenge any such liens.

K.    At Closing, the Broker shall be entitled to allowance of compensation (the "Broker Compensation") for services rendered as set forth in the Exclusive Sales Listing Agreement and in the order approving the Broker's retention, without having to file a fee application.

L.    At Closing, a reserve shall be established in an amount sufficient to pay in full all of the accrued, but unpaid, fees and expenses of all Professionals retained as of Closing, including Pillsbury Winthrop Shaw Pittman LLP and Mr. William Johnson (the "Professional Fee Reserve"). The Professional Fee Reserve shall be held in escrow by the Title Company. Upon entry of an order of this Court approving a Professional's fees and expenses, the Title Company shall disburse funds to that Professional in accordance with the Court's order. The Professional Fee Reserve will be exclusively for the benefit of Professionals retained as of the Confirmation Date.

4839-3972-0794.v6

M.     At Closing, the Debtor shall also establish a reserve in an amount sufficient to pay in full any and all estimated fees that may be due to the Office of the U.S. Trustee within one year after the Effective Date (the "UST Reserve").  Any fees due to the Office of the U.S. Trustee after the Confirmation Date shall be payable from the funds available in the UST Reserve, and after the UST Reserve has been exhausted, from the Net Sale Proceeds.

N.     All funds remaining after (i) payment of the costs associated with the Sale, including the Broker's Compensation, (ii) payment of Administrative Expenses, and (ii) funding the Professional Fee Reserve and the UST Reserve, shall be held in escrow by the Title Company to pay Allowed Claims pursuant to the terms of the Plan and this Order.  The funds so held in escrow and the Professional Fee Reserve shall be governed by the Escrow Agreement attached hereto as **Exhibit 2**.

O.     The Debtor shall have full power and authority to take all actions necessary to consummate the Sale.  The Sale has been duly and validly authorized by all necessary action of the Debtor and no other corporate action is required of the Debtor for the Debtor to consummate the Sale.  Neither the execution of the Purchase Agreement nor the consummation of the Sale, pursuant to the terms of the Purchase Agreement, the Plan and this Order, shall constitute a violation of any provision of the organizational documents of the Debtor or any other instrument, law, regulation, or ordinance by which the Debtor is bound.

P.     The Sale pursuant to this Order shall be binding on the Purchaser, the Debtor, the Former Residents, Unit Lienholders, all creditors of the Debtor, and all persons having or asserting a lien, encumbrance or other interest against the Debtor or the Property.

Q.     The Sale has been undertaken by Purchaser and the Debtor at arm's-length, without collusion, and Purchaser shall acquire the Property in good faith under section 363(m) of

14

the Bankruptcy Code and is and shall be entitled to all of the protections in accordance therewith. The offer made by Purchaser for the Property is fair and reasonable, and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

R.    This Order and all provisions of the Purchase Agreement shall be binding on any successors and assigns of the Debtor, including, without limitation, any trustee appointed for the Debtor in this chapter 11 case or in any superseding proceeding under chapter 7 of the Bankruptcy Code.

S.    This Order is entered in accordance with and pursuant to the Plan.  Nothing contained in any order of the Court entered after the date hereof, shall conflict with or derogate the provisions of this Order or the Plan.

T.    Pursuant to section 1146(a) of the Bankruptcy Code, the making or delivery of an instrument of transfer in connection with the Sale shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

U.    The Purchase Agreement may be modified, amended, or supplemented by the parties thereto, in a writing signed by the Debtor and the Purchaser and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtor or its estate.

V.    To the extent any inconsistency exists between the provisions of the Purchase Agreement and this Order, the provisions contained herein shall govern.  The failure specifically to include any provisions of the Purchase Agreement in this Order does not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

4839-3972-0794.v6

W.    Without limiting in any manner the effect of the other provisions of this Order, any person or entity that has filed financing statements or other documents evidencing or otherwise asserting a lien, encumbrance or other interest against the Property shall be, and hereby is, directed to deliver to the Debtor prior to closing of the Sale, in proper form for filing at such closing, and executed by the appropriate parties, termination statements or similar instruments as appropriate to cause the release of any such lien, encumbrance or other interest, and if any such person or entity fails to comply with the direction set forth in this paragraph, then, Purchaser is hereby authorized, without the requirement of any further action (including order of the Court) to (i) execute and file or record such statements, instruments, releases, and other documents on behalf of such person or entity releasing such asserted lien, encumbrance or other interest in, to, or against the Property, (ii) file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the termination or release of any such lien, encumbrance or other interest in, to, or against the Property, and (iii) take such actions as may be necessary to obtain a release of any and all liens, encumbrances or other interests against the Property and to the extent contemplated hereby and by the Purchase Agreement.

X.    This Order (a) shall be effective as a determination that, on the Closing, all liens, encumbrances, rights or other interests against the Property of any kind or nature whatsoever existing prior to the Closing have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties

16

of their office, or contract, to accept, file, register or otherwise record or release any documents

or instruments, or who may be required to report or insure any title or state of title in or to the

Property.  Each and every federal, state, and local government agency or department is hereby

directed to accept any and all documents and instruments necessary and appropriate to

consummate the Sale.  All interests of record as of the Closing shall be forthwith deemed

removed and stricken as against the Property.  All entities described in this paragraph are

authorized and specifically directed to strike all such recorded liens, claims, rights, interests and

encumbrances against the Property from their records, official and otherwise.

        Y.      Without limiting the generality of the other provisions of this Order, and to the

extent provided by federal law, Purchaser shall not be deemed to be a successor of the Debtor

under any circumstances (and Purchaser expressly has disclaimed any such liability), and

Purchaser shall have no successor or vicarious liabilities of any kind with respect to the Property.

        Z.      Until this Bankruptcy Case is closed or dismissed, the Court shall retain exclusive

jurisdiction to interpret, construe, and enforce the provisions of the Purchase Agreement and this

Order in all respects, and further, to hear and determine any and all disputes relating to the

Purchase Agreement or this Order.

        AA.      This Order shall take effect immediately and neither this Order nor actions

authorized or directed to be taken pursuant to this Order shall be stayed pursuant to Rules

6004(h) or 7062, or otherwise.

**MISCELLANEOUS HOLDINGS**

        BB.      The provisions of the Plan and this Order are binding on the Debtor,  its

successors, Former Residents, Unit Lienholders, all entities acquiring property under the Plan, all

17

Creditors, and all other parties in interest, whether or not such parties' Claims are impaired under the Plan, and whether or not such Creditors voted to accept the Plan.

CC.    The failure to reference or discuss any particular provision of the Plan in this Order shall have no effect on the validity, binding effect, and enforceability of such provision and such provision shall have the same validity, binding effect and enforceability as every other provision of the Plan.

DD.    The Debtor is authorized, empowered and directed to issue, execute, deliver, file and record any documents, instruments, agreements, court papers or pleadings, and to take any and all actions that are necessary or desirable to implement, effectuate, and consummate the Sale and the Plan, all without further application to, or order of, the Court.

EE.    All executory contracts and leases of the Debtor, other than its insurance policy for the Property, shall be deemed rejected by the Debtor on the Effective Date unless (a) assumed by order of the Court prior to the Effective Date, (b) otherwise provided by the Plan, (c) an application to assume has been filed with the Court prior to the Effective Date, or (d) assumption or rejection is otherwise ordered by the Court.  Notwithstanding anything to the contrary herein or in the Plan.

FF.    Any Claim arising from the rejection of an unexpired lease or executory contract shall be filed with the Court no later than thirty (30) days after the entry of the order approving such rejection.  If not timely filed, then such Claim shall be waived and forever barred.  Any Allowed Claim arising from the rejection of an executory contract or an unexpired lease shall be deemed a Class 3 Claim.

GG.    All requests for payment of unpaid Administrative Claims, including applications of Professionals for compensation and expense reimbursement for services rendered or expenses

4839-3972-0794.v6

incurred through the Confirmation Date, shall be filed with the Court no later than thirty (30) calendar days after the Confirmation Date. If not timely filed, then such Administrative Claims will be waived and forever barred.

HH.    The Debtor may (i) retain Professionals (subject to the Court's approval) to implement the terms of the Plan, including to assist with the reconciliation of Claims and the making of Distributions, and (ii) pay the Post-Confirmation Professional Claims of such retained Professionals from the Net Sale Proceeds without the need to obtain further Court approval. At Closing, the Debtor shall provide Debtor's Counsel with a $300,000.00 retainer as security for post-confirmation services to be provided in connection with the implementation of the Plan.

II.    The Debtor retains the right to file objections to Claims and to litigate any such objections to a final determination by the Court or to compromise, settle, or otherwise resolve any such objection subject to the Court's approval; *provided, however*, that the Debtor may settle any Claims without prior court approval if the allowed amount of the Claim does not exceed $25,000.00 and if the U.S. Trustee and the 20 largest unsecured creditors fail to object after ten (10) business days' notice of such settlement.

JJ.    The Purchaser and any third parties, including the title company and all present and future title insurers may rely on the findings and conclusions contained in this Order.

KK.    The deadlines in the Commitment for confirmation of the Plan and entry of this Order are hereby deemed satisfied such that confirmation of the Plan and entry of this Order constitutes timely compliance with the deadlines in the Commitment.

LL.    The Debtor will continue to exist until the Plan has been substantially consummated and the Bankruptcy Case is closed.

4839-3972-0794.v6

MM.    Until the Bankruptcy Case is closed by entry of a final order to such effect, and subject to sections 157 and 1334 of title 28 of the United States Code, the Court shall retain exclusive jurisdiction over all matters arising under, arising in or relating to this Bankruptcy Case and the Plan in accordance with the terms of the Plan.

NN.    The Debtor shall mail notice of the entry of this Order to each party (i) listed in the Debtor's mailing matrix, (ii) filing a proof of claim in this Bankruptcy Case, and (iii) to any unexpired lease or executory contract not assumed by the Debtor.


**END OF ORDER**

cc:    Patrick J. Potter
       Pillsbury Winthrop Shaw Pittman LLP
       1200 Seventeenth Street, NW
       Washington, DC 20036

       Dania Slim
       Pillsbury Winthrop Shaw Pittman LLP
       324 Royal Palm Way, Suite 220
       Palm Beach, FL 33480

       Jason S. Sharp
       Pillsbury Winthrop Shaw Pittman LLP
       2 Houston Center
       909 Fannin, Suite 2000
       Houston, TX 77010-1028

       William C. Johnson, Jr.
       1310 L Street NW, Suite 750
       Washington, DC 20005

       Michael J. Lichtenstein
       Shulman Rogers
       12505 Park Potomac Avenue
       Potomac, MD 20854


       All Parties Requesting Notice

4839-3972-0794.v6

<u>**EXHIBIT E**</u>

**CERTIFICATE OF NON-FOREIGN STATUS**

Section 1445 of the Internal Revenue Code provides that a transferee of a U.S. real property interest must withhold tax if the transferor is a foreign person.  For U.S. tax purposes (including Section 1445) the owner of a disregarded entity (which has legal title to a U.S. real property interest under local law) will be the transferor of the property and not the disregarded entity.

To inform the transferee that withholding of tax is not required upon the sale of the real property described in the attached Exhibit A, the undersigned The Condominium Association of the Lynnhill Condominium, a Maryland condominium association (the "<u>Transferor</u>"), hereby certifies to _____, its successors and assigns (the "<u>Transferee</u>"), that:

1.  Transferor is not a foreign person, foreign partnership, foreign trust, or foreign estate (as those terms are defined in the Internal Revenue Code and Income Tax Regulations);

2.  Transferor's US Federal Tax Identification Number is: [_____];

3.  Transferor is not a disregarded entity as defined in §1.1445-2(b)(2)(iii) of the Income Tax Regulations; and

4.  Transferor's principal office address is [_____].

Transferor is aware that Transferee is relying upon this Certificate in not withholding ten percent (10%) of the amount realized on the disposition of the Property by Transferor to Transferee as otherwise would be required of Transferee by Section 1445 of the Internal Revenue Code of 1986, as amended.

Transferor understands that this certification may be disclosed to the Internal Revenue Service by transferee and that any false statement contained herein could be punished by fine, imprisonment, or both.

<u>TRANSFEROR</u>:

THE CONDOMINIUM ASSOCIATION OF THE LYNNHILL CONDOMINIUM, a Maryland condominium association

By:    _____
Name: _____
Title:  _____

E-1

**<u>EXHIBIT F</u>**

**FORM OF QUITCLAIM DEED**

RETURN TO:

_____

_____

_____

_____

**QUITCLAIM DEED**

THIS QUITCLAIM DEED is made this ___ day of _____, 2018, by and between CONDOMINIUM ASSOCIATION OF THE LYNNHILL CONDOMINIUM, a Maryland condominium association ("**Grantor**"), and AHH16 DEVELOPMENT, LLC, a [Maryland] limited liability company ("**Grantee**").

WITNESSETH:

THAT, for and in consideration of the sum of _____ Dollars ($_____.00), cash in hand paid, Grantor does hereby grant, bargain, sell and convey, without warranty, unto Grantee, all right, title and interest that Grantor has authority to convey in and to that certain parcel of land situate in Prince George's County, Maryland (the "**Real Estate**"), and being more particularly described as follows:

See <u>Exhibit A</u> attached hereto and incorporated herein.

This conveyance is made subject to all recorded covenants, restrictions, conditions, easements, reservations, agreements, and rights-of-way without serving to reimpose same, to the extent, but only to the extent, that the same are valid and subsisting and apply to the Real Estate or any part thereof.

TO HAVE AND TO HOLD the Real Estate, together with all rights, privileges, and advantages thereunto belonging or appertaining to Grantee, its successors and assigns, forever.

Grantor hereby certifies under the penalties of perjury that the actual consideration paid or to be paid for the aforegoing conveyance, including the amount of any mortgage or deed of trust assumed by the Grantee, is in the sum total of _____ Dollars ($_____.00).

F-1

IN WITNESS WHEREOF, Grantor has caused this Deed to be executed as of the date first above written.

THE CONDOMINIUM ASSOCIATION OF THE LYNNHILL CONDOMINIUM, a Maryland condominium association

By: _____
Name: _____
Title: _____

_____    )
                           )        ss:
_____    )

On this the _____ day of _____, 2018, before me, the undersigned officer, personally appeared _____, who acknowledged himself/herself to be the Authorized Representative of THE CONDOMINIUM ASSOCIATION OF THE LYNNHILL CONDOMINIUM, a Maryland condominium association, and that he/she, being authorized so to do, acknowledged before me that he/she executed the foregoing instrument for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_____[SEAL]
Notary Public

My Commission Expires: _____

F-2

<u>CERTIFICATION</u>

I hereby certify that this instrument was prepared by or under the supervision of an attorney admitted to practice before the Court of Appeals of the State of Maryland.


_____

Name: _____

F-3

**<u>EXHIBIT G</u>**

**FORM OF TITLE AFFIDAVIT**

**[to be agreed]**