**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**Greenbelt Division**

In re:

THE CONDOMINIUM ASSOCIATION OF
THE LYNNHILL CONDOMINIUM,

          Debtor.[1]

Case No. 18-10334

Chapter 11

**REPLY IN FURTHER SUPPORT OF THE DEBTOR'S MOTION FOR APPROVAL OF**
**AUCTION AND BIDDING PROCEDURES**

In response to the *Limited Objection of Dragone Realty, LLC to Motion for Approval of Auction and Bidding Procedures* [Doc. 130] and in further support of the *Debtor's Motion for an Order (I) Approving AHH16 Development, LLC as "Stalking Horse" By Approving the Break-Up Fee and Expense Reimbursement, (II) Approving Auction and Bidding Procedures and (III) Granting Related Relief* [Doc. 93] (the "Motion"), the Condominium Association of the Lynnhill Condominium (the "Debtor") respectfully states as follows:

1.      Dragone Realty, LLC ("Dragone") was actively engaged in the pre-petition auction process for the Property[2] that Transwestern conducted.

2.      Dragone made two offers for the Property.

3.      A true and accurate copy of Dragone's final pre-petition offer is attached as **Exhibit 1** to this Reply.  The final purchase price offered by Dragone (pre-petition) was $10 million (*see* Exhibit at ¶1).  Despite Dragone's current position on the magnitude of break-up fees, Dragone's pre-petition offer included a break-up fee of $600,000 and an expense reimbursement of $500,000.  This is considerably higher (both in nominal dollars and as a

---

[1]  The Debtor's federal identification number is 52-0993760.

percentage of the purchase price) than the proposed break-up fee and expense reimbursement that Dragone objects to.

4.     Notably, no one other than Dragone has objected to the proposed break-up fee and expense reimbursement, including none of the creditors or unit owners, all of whom have real economic risk in this case (rather than being opportunistic). The U.S. Trustee also has not objected to the Motion.

5.     Dragone bought a small (disputed) claim with knowledge of the break-up fee and expense reimbursement; indeed, it appears Dragone purchased the claim to challenge the break-up fee and expense reimbursement.

6.     The Court should not elevate Dragone's position to those of the Debtor (and its Board of Directors) or those with real economic risk in this case.

7.     Additionally, in Dragone's limited objection to the approximately 4.5% break-up fee agreed to by the Debtor and AHH, Dragone cites the Court to unpublished decisions from the Baltimore Division where the requested and approved break-up fees ranged between 1.25% and 3%. Dragone does not cite this Court's decision in *In re Neogenix Oncology, Inc.* [Doc. 122, No. 12-23557 (TJC)], where the Court approved a break-up fee that appears to be in the 12.89% (or higher) range ($475,000 break-up fee compared to a cash purchase price in the range of up to $3,685,000). A copy of Judge Catliota's findings and holdings in *Neogenix* is attached as **Exhibit 2**. Also notable is Judge Catliota's reliance on the debtor's business judgment and its arms' length negotiations with the stalking horse bidder.

---

[2]  Capitalized terms used but not defined in this Reply have the meanings given such terms in the Motion.

WHEREFORE, for the reasons set forth herein and in the Motion, the Debtor respectfully requests that the Court overrule Dragone's limited objection and approve the proposed break-up fee and expense reimbursement.

Dated:  January 31, 2018                          Respectfully submitted,

                                                  Pillsbury Winthrop Shaw Pittman LLP

                                                  */s/ Patrick Potter*
                                                  Patrick J. Potter (Bar No. 08445)
                                                  1200 Seventeenth Street, NW
                                                  Washington, DC 20036
                                                  Tel (202) 663-8928
                                                  Fax (202) 663-8007
                                                  E-mail:  patrick.potter@pillsburylaw.com

                                                  Dania Slim (Bar No. 18050)
                                                  324 Royal Palm Way, Suite 220
                                                  Palm Beach, FL 33480
                                                  Tel (202) 663-9240
                                                  Fax (202) 663-8007
                                                  E-mail:  dania.slim@pillsburylaw.com

                                                  Jason S. Sharp (admitted *pro hac vice*)
                                                  2 Houston Center
                                                  909 Fannin, Suite 2000
                                                  Houston, TX 77010
                                                  Tel (713) 276-7600
                                                  Fax (713) 276-7673
                                                  Email:  jason.sharp@pillsburylaw.com

                                                  *Proposed Counsel for the Debtor*

**<u>Exhibit 1</u>**



November 27, 2017

Robin Williams
Dean Sigmon
Transwestern Mid-Atlantic Multifamily Group
6700 Rockledge Dr. Suite 500A
Bethesda, Maryland 20817

**Re:**    *Letter of Intent – Lynnhill Condominiums*

Dear Robin and Dean:

We are pleased to submit this Letter of Intent ("Agreement"), to be further negotiated and detailed, for the purchase of the above-referenced property subject to the execution of an Agreement of Sale:

In addition to the terms described below, I would like to offer the following information about my company that will help describe my ability and commitment to closing this transaction as a Partnership with Lynnhill.

I am very familiar with large multi-family renovation and construction projects. Within the last 6 years my construction company has successfully renovated 5 multi-family projects in Prince George's County totaling 2,558 units.  Two of the most recent renovations were a 930-unit complex in District Heights and a 727-unit complex in Landover Hills.  Another community, The Milano, 305 units in Oxon Hill, included a gut-renovation of a 7-story, 90-unit Mid-rise building that is very similar to the two buildings that make up Lynnhill Condominiums.  All of my renovation projects have been completed on budget and on time (most earlier than our projections).

Just today, I closed on another $131,000,000 acquisition in Prince Georges County, called The Avanti, where I bought out my original partners.

I have all of the necessary funds available and the capacity to invest the dollars detailed below. If necessary, additional monies are available to successfully close on this transaction and transform another property and neighborhood in Prince George's County.

I will work closely with my attorney, Joe Hoffman of Kelley Drye & Warren LLP, to form a partnership with Lynnhill and to bring this transaction to a successful close.

1. **Purchase Price**
   Dragone Realty Investments ("Purchaser") will pay Ten Million Dollars ($10,000,000) for the above-referenced property.

2. **Terms**
   Cash payable at closing, subject to usual and customary pro-rations.

   **Break-up Fee** – A Break-up Fee in the amount of Six Hundred Thousand Dollars ($600,000) shall be paid in the event Buyer is not chosen by the Court as the Purchaser.

   **Expense Reimbursement –** Expenses will be reimbursed at an estimated Five Hundred Thousand Dollars ($500,000) in the event Buyer is not chosen by the Court as the Purchaser.

   **Availability of Funds** – In addition to the above, there will be an availability of funds up to One Million Dollars ($1,000,000) to pay various fees at closing which shall be applicable as a credit to the Purchase Price for the Buyer.

3. **Closing**
   Closing will occur in conjunction with the bankruptcy process.

4. **Due Diligence Period**
   Purchaser will have a Forty-Five (45) Day Due Diligence Period to assess the Property. The assessment shall include but not be limited to performing any environmental and/or structural inspections, visual inspections, tests and/or feasibility studies of the Properties. Purchaser shall pay its own costs incurred during the Due Diligence Period. The seller shall provide copies of all of the documents listed in Exhibit A attached hereto ("Seller's Documents") concerning the Properties, as requested by the purchaser within five (5) days after the execution of this Letter of Intent. The Due Diligence Period will commence upon receipt of all of the Seller's Documents. Purchaser shall give

notice to Seller by the end of the Due Diligence Period indicating whether or not the Purchaser is satisfied with its results.

5. **Agreement of Sale**

   Within Five (5) business days after the Effective Date of this Agreement, Seller will provide Purchaser with a draft Agreement of Sale, which, if executed, will be a legally binding agreement containing the definitive terms and conditions of the transactions described herein, and shall supersede this Agreement in its entirety.

   The parties hereto agree to attempt to negotiate in good faith the terms of the Agreement of Sale within Fifteen (15) business days after the Effective Date. In the event an Agreement of Sale is not executed by all necessary parties, including Purchaser and Seller, within Fifteen (15) business days after the Effective Date, then neither party shall have any further obligations to the other.

6. **Brokerage**

   Seller shall be responsible for any brokerage commissions.

7. **Seller's Obligations**

   In consideration of purchaser's costs, expenses and time associated with its due diligence activities relating to the asset and the preparation and negotiation of an Agreement of Sale with respect to the asset, seller shall agree not to enter into any agreement, letter of intent or option with any other potential purchaser relating to a sale or financing of the Properties, from the date seller executes the Agreement of Sale until the date that is subsequent to Thirty (30) days after its execution by both parties or earlier if purchaser notifies seller in writing that it does not intend to proceed with the transaction described herein.  In the event that purchaser and seller do not execute the Agreement of Sale within Thirty (30) days after the Effective Date, then neither party shall have any further obligation to the other.

8. **Confidential Agreement**

   All information contained herein shall be treated as confidential and shall not be disclosed, revealed and/or released to any other person other than the seller's and their attorney.

This offer will remain open until December 8, 2017.

Execution of this letter by the Seller as indicated by their signature in the proper place indicated below would demonstrate your interest and authority to proceed on this matter and your approval in principle of the price and sale terms indicated herein. The date that both parties execute this letter shall be the "Effective Date" of this Letter of Intent. Furthermore your approval will acknowledge that as Seller you will immediately take the Properties off of the sales market until such time as an Agreement of Sale has been executed.

Very truly yours,
**Dragone Realty Investments**


By: _____
      Vito Dragone III
      President



AGREED AND ACCEPTED:


_____

By: _____    _____

its _____    Date

By: _____

_____
        **(Print name and title of signor)**

## **Exhibit A - Seller's Documents**

1. A current-period rent roll and tenant profile for the Properties indicating unit number, type of unit (i.e., number of bedrooms, baths, type of amenities, etc.), rent, amount and type of security deposit, lease commencement and expiration dates, and any rental concessions or inducements offered to such tenants at the time of initial occupancy, and tenant name.

2. A current schedule indicating unit number, tenant name, occupation and salary.

3. Copies of all project loan related documents and any amendments thereto including, but not limited to, all trust indentures, promissory notes, loan agreements, mortgages, deeds of trust, deeds of trust to secure debt, contracts for deed, land use restriction or regulatory agreement, guarantee agreements, letter(s) of credit, and any other contract of sale encumbering the Properties.

4. A list of all contractors, suppliers and vendors pertaining to the operation of the Properties, along with copies of any contracts or agreements with such contractors, suppliers, vendors and employees.

5. Copies of any revenue producing contracts (cable, phone, laundry, vending, rooftop antenna, etc.)

6. Copies of all maintenance and service agreements relating to the Properties.

7. Copies of all utility bills relating to the Properties for the previous twelve months. Documentation regarding any bulk purchase agreements.  Schedule of all utility account numbers and service addresses.

8. A summary of any outstanding zoning or other issues relating to local government regulations or other requirements.  Copies of any existing zoning verification letters, reports, or documents issued by the municipality or governing agency.

9. Copy of the "standard lease package" provided to future or new residents (blank 'form' lease, pre-occupancy checklists, pet agreements, any and all lease addendums, rules and regulations, rent increase letters, application, Properties brochure, etc.) along with access to all tenant leases and rental agreements relating to the Properties.

10. A checklist of all leases for Properties used by Seller in connection with the operation of the Properties, including a description of the leased Properties, the term and expiration date of such lease and the periodic lease payment together with copies of such leases.

11. Copies of detailed operating statements and financial statements (including those prepared by independent auditors and accountants, if available) for the preceding three years (2014, 2015, 2016), and current year (2017) to date by month.

12. Copies of detailed accounting reports for the preceding three year ends (2014, 2015, 2016), and current year (2017) to date by month (including, but not limited to traffic reports, move in and move out schedules, vacancy & occupancy reports, delinquency and prepaid reports, accounts payable information, general ledgers, trial balances, balance sheets, check registers, deposit batch reports, etc.)

13. Copies of ad valorem and other Properties tax assessments and bills (including personal Properties tax, if applicable) relating to the Properties for the current tax year, and the immediately preceding three tax years, including copies of any proposed assessments for the current or forthcoming tax year.  Also identify and include a summary of any contested tax assessments relating to the Properties for the preceding three tax years, and the results thereof.

14. A copy of any termite bond or termite treatment contract.

15. Copies of all policies of hazard, rent and liability insurance pertaining to the Properties.

16. A summary of all insurance claims and copies of any claim filings/reports affecting or involving the Properties within the past 5 years.

17. A summary of all pending or threatened litigation affecting or involving the Properties and, where applicable, a copy of all pleadings relating thereto.  If no litigation affecting or involving the Properties is currently pending or threatened, a certified, written statement to that effect.

18. A list of all personal Properties currently used in the maintenance and operation of the Properties, other than leased Properties referred to in 10 above.

19. A copy of the "as-built" architectural plans, including construction documents pertaining to the same of the Properties.

20. A copy of the site plans, including any approved revisions, of the Properties.

21. Any currently existing ALTA survey(s) of the Properties.

22. Copies of any currently existing appraisals, environmental studies (including O&M plans) and/or engineering reports concerning the physical conditions and operations of the Properties (including any documentation regarding asbestos, underground or above ground storage tanks, mold, lead paint, lead in water, radon, PCB's, etc.).

23. A copy of most recent title insurance policy, exhibits, easements and rights-of-way referenced therein, issued to Seller on the Properties.

24. A list of all employees currently employed in the operation of the Properties, setting forth his/her name, address, telephone number, position, salary and benefits (including rent free units or rental discounts).

25. Access to all tenant ledger cards.

26. Local market survey(s) and analysis.

27. Copies of all certificates provided to the Issuer by Seller's management agent certifying compliance by Seller with all leasing restrictions and requirements contained in any land use restriction agreements.

28. Copies of all governmental or other licenses, permits, certificates, and registrations (including, but not limited to, rental or operating, building, boiler, pool, elevator, Certificate of Occupancy or Use and Occupancy permits, etc).

29. Copies of all governmental (City, County, State, etc.) or other inspection reports, citations, warnings, or violation notices and information regarding the remedies taken to correct any deficiencies.

30. Copies of the two most recent inspection or maintenance reports produced by the governing agency or maintenance contractor regarding any and all fire/life safety systems (including, but not limited to fire alarms, sprinkler systems, fire hydrants, standpipes, emergency exits, emergency lighting, emergency generators, fire extinguishers, etc.).

   A.  Including the most recent County Fire Department Inspection and any Correction Order(s) along with documentation related to any repair or replacement of items noted as requiring correction or re-inspection.

   B.  Including a recent (within 1 calendar year) Fire Hydrant Flow Rate Inspection Report (conducted by a certified vendor) which indicates that the fire hydrants located within the Properties' boundaries meet or exceed the flow rate (GPM's) required by the local fire department and/or governing agency.

31. ADA and Fair Housing compliance information.

32. A copy of the Lead Inspection Certificate and all Risk Reduction Certificates, as required by the Maryland Department of the Environment, if applicable (Maryland Lead Risk Reduction in Housing Act).

33. A copy of the Wooden Balcony Inspection Certification Letter required to be provided to Prince George's County, Enforcement Division certifying that the wooden railings meet current code requirements, as required by State of Maryland Legislation SB401 (if applicable).

34. Description of the recyclable materials collection program, as required by the Maryland Department of the Environment and Prince George's County..

**<u>Exhibit 2</u>**

**SO ORDERED**



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
#### Greenbelt Division

|  |  |  |
|---|---|---|
| In re: | ) | **Chapter 11** |
|  | ) |  |
| **NEOGENIX ONCOLOGY, INC.,** | ) | **Case No. 12-23557 (TJC)** |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

### ORDER APPROVING (I) BID PROCEDURES RELATING TO THE SALE OF THE DEBTOR'S ASSETS; (II) APPROVING BID PROTECTIONS; (III) SCHEDULING A HEARING TO CONSIDER THE SALE; (IV) APPROVING THE FORM AND MANNER OF NOTICE OF SALE BY AUCTION; (V) ESTABLISHING PROCEDURES FOR NOTICING AND DETERMINING CURE COSTS; AND (VI) GRANTING RELATED RELIEF

Upon the Motion[1] filed by the above-captioned debtor and debtor-in-possession (the

"**Debtor**"), pursuant to sections 105(a), 363, 365 and 503(b) of title 11 of the United States

Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), and Rules 2002, 6004, 6006, and

9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for the entry of

two orders: (a) the Bid Procedures Order, (i) approving the Bid Procedures, including the bid

protections as set forth in the asset purchase agreement (the "**Agreement**") between the Debtor,

as seller, and Precision Biologics, Inc., as buyer ("**Buyer**" or the "**Stalking Horse Bidder**"),

---

[1] Unless otherwise stated, all capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion and the Agreement attached thereto as **Exhibit "E"**, and to the extent of any inconsistency, the Motion shall govern.

with respect to the proposed sale (the "**Sale**") of substantially all of the assets of the Debtor (as discussed in greater detail below, the "**Acquired Assets**"), (ii) scheduling a hearing (the "**Sale Hearing**") on the Sale and setting objection and bidding deadlines with respect to the Sale, (iii) approving the form and manner of notice of the auction for the Acquired Assets (the "**Auction**") and the Sale Hearing, (iv) establishing procedures to determine cure amounts and deadlines for objections for certain contracts and leases to be assumed and assigned by the Debtor (the "**Acquired Contracts**"); and (v) granting related relief; and (b) a Sale Order, (i) authorizing and approving the Agreement; (ii) authorizing the sale free and clear of liens, claims, encumbrances, and interests, pursuant to the Agreement, with such liens, claims, encumbrances and interests, if any, to attach to the proceeds received by the Debtor from the Sale Proceeds, (iii) authorizing the assumption and sale of the Acquired Contracts, and (iv) granting related relief; and upon consideration of all objections to the Motion; and it appearing that the notice of the Motion provided is appropriate and sufficient under the circumstances and that no other or further notice need be given; and a hearing having been held on August 15, 2012; and it appearing that the relief requested is in the best interests of the Debtor's estate, its stakeholders, and other parties in interest; and after due deliberation and sufficient cause appearing therefor:

THE COURT HEREBY FINDS AND CONCLUDES THAT:[2]

A.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This proceeding is a core proceeding pursuant to 28 U.S.C. § 157.  Venue is proper in this district and in this court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] The findings and conclusions set forth herein constitute the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     The statutory predicates for the relief requested herein are sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9007.

C.     Notice of the Motion having been given as set forth in the Motion is sufficient in light of the circumstances and the nature of the relief requested herein.

D.     The Debtor has articulated good and sufficient reasons for this Court to grant the relief requested in the Motion regarding the Sale process, including, without limitation: (i) approving the Bid Procedures; (ii) approving the Break-Up Fee; (iii) scheduling the Auction and the Sale Hearing; (iv) approving the Sale Notice; and (v) approving the Cure Notice and Acquired Contracts.

E.     The Bid Procedures attached hereto as **Exhibit "1"** were proposed and negotiated in good faith by the Debtor and the Stalking Horse Bidder and are fair, reasonable and appropriate under the circumstances and are properly designed to maximize the recovery from any sale of the Acquired Assets.

F.     The Stalking Horse Bidder has expended, and likely will continue to expend, considerable time, money and energy pursuing the Sale.  Recognizing this expenditure of time, energy and resources, the Debtor has agreed to pay the Break-Up Fee to the Stalking Horse Bidder on the terms and conditions set forth in the Agreement; provided, however, that the Break-Up Fee shall be reduced to $475,000.

G.     The Break-Up Fee is (i) the product of extensive negotiations between the Debtor and the Stalking Horse Bidder, (ii) a material inducement for, and condition of, the Stalking Horse Bidder's entry into the Agreement, and (iii) fair and reasonable in view of the fact that, if the Break-Up Fee is triggered, the Stalking Horse Bidder's efforts will have substantially increased the chances that the Debtor will receive the highest or otherwise best offer for the

3

Acquired Assets. Payment of the Break-Up Fee under the circumstances described in the Agreement is: (i) an actual and necessary cost and expense of preserving the Debtor's estate within the meaning of sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code; (ii) commensurate to the real and substantial benefit conferred upon the Debtor's estate by the Stalking Horse Bidder; (iii) reasonable and appropriate, in light of the size and nature of the proposed sale transaction and comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by the Stalking Horse Bidder; and (iv) necessary to induce the Stalking Horse Bidder to continue to pursue the Transaction and to continue to be bound by the Agreement.

H.    The Debtor has demonstrated a sound business justification for authorizing the payment of the Break-Up Fee to the Stalking Horse Bidder under the circumstances set forth in the Agreement.

I.    The Sale Notice attached hereto as **Exhibit "2"** is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Sale Hearing, the Secondary Sale Hearing (as defined below), the Auction (whether held on the Auction Date or the Secondary Auction Date (each as defined below)), and the Transaction, and no other and further notice is required.

J.    The Cure Procedures and the Cure Notice attached hereto as **Exhibit "3"** are appropriate and reasonably calculated to provide all Contract Parties with proper notice of the potential assumption and assignment of their executory contract or unexpired lease and any cure costs relating thereto and no further notice is required.

K.    The entry of this Order is in the best interests of the Debtor, its estate, shareholders, and other parties in interest.

NOW THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Bid Procedures and Cure Procedures are approved and the relief requested in the Motion as pertains to the Bid Procedures and Cure Procedures, is granted as set forth herein.

2.      All objections to the relief requested in the Motion with respect to the Bid Procedures or Cure Procedures that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or as reflected in this Order or by stipulation or withdrawal filed with the Court, are overruled except as otherwise set forth herein.

3.      The Debtor is hereby authorized to enter into and execute the Agreement (as amended below and as modified to the extent necessary to comply with the terms of this Order), and to perform such obligations under the Agreement which may arise prior to the Sale Hearing. The Agreement is hereby amended as follows:

   a.      Section 11.4 of the Agreement is hereby amended by replacing "$500,000" with "$475,000".

   b.      Section 3.1(f) of the Agreement is hereby replaced and amended as follows:

> As consideration for the portion of the cash purchase price to be used to finance the Existing Claims (the "**Litigation Financing**"), out of the proceeds of such litigation, after payment of the Liquidating Trustee's fees and expenses and professional fees and expenses of such litigation, Seller will pay to the Purchaser an amount equal to the Litigation Financing plus interest, compounded annually at 12% per annum. If any portion of the Contingent Cash is required, the Seller will repay to the Purchaser out of any proceeds received by Seller from the Existing Claims, after payment of the Liquidating Trustee's fees and expenses and professional fees and expenses of such litigation and the Litigation Financing plus interest (as described herein), the Contingent Cash plus interest compounded annually at 12% per annum.

   c.      Section 12.8 of the Agreement is hereby replaced and amended as follows:

Notwithstanding any other provision of this Agreement to the contrary, in the event that there are either any Cure Costs or any other types of payments that are required to be made to any Third Parties by the seller in connection with the Closing, the Purchaser shall have the option to either (i) fund such Cure Costs and payments or (ii) elect to not close on the transaction contemplated by this Agreement, underlined provided that the Cure Costs associated with any one contract or agreement exceeds $15,000, or, the Cure Costs exceed $50,000 in the aggregate. In the event that the Purchaser elects to fund such Cure Costs and payments, the Purchaser shall be entitled to be repaid any such amounts, with interest at the Short Term Applicable Federal Rate (as defined by the IRS), out of the net proceeds resulting from the monetization of the Existing Claims after payment of the Liquidating Trustee's fees and expenses and the professional fees and expenses of such litigation.

4.      The Break-Up Fee in the amount of $475,000 is reasonable and appropriate under the circumstances and hereby approved. In the event that the Transaction is consummated with any party other than the Stalking Horse Bidder, the Debtor shall pay the Stalking Horse Bidder the Break-Up Fee out of the cash portion of the consideration of the Successful Bid, in accordance with the terms set forth in the Agreement without further order of this Court. The Debtor's obligation to pay the Break-Up Fee shall constitute a superpriority administrative expense obligation with priority over any and all expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, subject only to any superpriority claims of the Debtor's postpetition lenders and the carve-out contained in the DIP Facility for the benefit of the Debtor's professionals and the professionals retained by the official committee of equity security holders (the "**Official Committee**").

5.      The Bid Procedures are hereby approved in the form annexed hereto as **Exhibit "1"** and fully incorporated into this Order, and shall apply with respect to the Auction and the proposed Sale of the Acquired Assets.

6. The Debtor is authorized to take any and all actions necessary or appropriate, consistent with the terms of this Order, to implement the Bid Procedures.

7. The Stalking Horse Bidder is hereby deemed a Qualified Bidder, whose Bid shall be deemed a Qualified Bid.

8. Pursuant to the Bid Procedures, a Qualified Bidder that desires to make a Bid shall deliver written copies of its bid to the Notice Parties not later than 5:00 p.m. (Prevailing Eastern Time) on September 6, 2012 (the "**Bid Deadline**") and shall comply with the requirements set forth in the Bid Procedures in making such a bid for the Acquired Assets.

9. To the extent that at least one Qualified Bid, other than the Stalking Horse Bidder's Bid, is timely received, the Debtor will hold the Auction, on September 11, 2012 at 10:00 a.m. (the "**Auction Date**") at the offices of Greenberg Traurig, LLP, 1750 Tysons Boulevard, Suite 1200, McLean, VA 22102, provided, however, that if at the end of the Bid Deadline there is a bona fide prospective purchaser who is interested in potentially submitting a Qualified Bid that is actively engaged in obtaining information from the Debtor in order to make a Qualified Bid, the Auction shall be held on September 19, 2012, at 10:00 a.m. (the "**Secondary Auction Date**") at the location set forth above.

10. If by the Bid Deadline the Debtor does not receive any Qualified Bids other than the Agreement with the Stalking Horse Bidder, the Debtor will not hold the Auction, and the Stalking Horse Bidder will be named the Successful Bidder.

11. Not later than 9:00 a.m. on the Auction Date or the Secondary Auction Date, the Debtor shall notify all Qualified Bidders (including the Stalking Horse Bidder) and counsel to the Official Committee, whether the Auction will occur.

12.     Upon conclusion of the bidding, the Auction shall be closed, and the Debtor, in consultation with the Official Committee, (i) shall review each Qualified Bid and Overbid on the basis of financial and contractual terms and the factors relevant to the Sale process and Cure Procedures, including, without limitation, those factors affecting the speed and certainty of consummating the Proposed Sale and the amount of the cash (or cash equivalent) consideration and the values or costs added by such Qualified Bid's or Overbid's contract assumption and rejection provision and (ii) identify the highest or otherwise best offer for the Acquired Assets (the "**Successful Bid**" and the entity submitting such Successful Bid, the "**Successful Bidder**").

13.     The Debtor, in the exercise of its reasonable business judgment, after consultation with the Official Committee, may (a) determine which Qualified Bid, if any, is the highest or otherwise best offer; and (b) reject, at any time before the entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of the Sale; or (iii) contrary to the best interests of the Debtor, its estate, and its shareholders.

14.     The Debtor shall sell the Acquired Assets to the Successful Bidder upon approval of the Successful Bid by the Bankruptcy Court at the Sale Hearing. The Debtor's presentation of a particular Qualified Bid to the Bankruptcy Court for approval shall constitute the Debtor's acceptance of the bid, subject only to approval by the Court at the Sale Hearing.

15.     The Cure Procedures, setting forth, among other things, the procedures for determining the Cure Costs and the deadline for objecting to the Cure Costs and/or the proposed assumption and assignment of executory contracts and unexpired leases, as provided in the Motion, are hereby approved in their entirety. The Cure Notice in the form attached hereto as

**Exhibit "3"** and service of such notice of the Cure Procedures to the non-Debtor contract parties, are appropriate and sufficient under the circumstances, and no other or further notice of the Cure Procedures need to be given.

16. The Court shall conduct the Sale Hearing commencing on September 14, 2012 at 10:00 a.m. (Prevailing Eastern Time) (the "**Sale Hearing Date**"), at which time, the Court will consider approval of the Sale to the Successful Bidder and the entry of the Sale Order; <u>provided, however</u>, that in the event that the Auction takes place on the Secondary Auction Date, the Sale Hearing shall commence on September 20, 2012 at 1:00 p.m. (Prevailing Eastern Time) (the "**Secondary Sale Hearing Date**").

17. Any party seeking to object to the Sale of the Acquired Assets shall have until September 12, 2012, at 5:00 p.m. (Prevailing Eastern Time) (the "**Objection Deadline**"), which deadline may be extended in the sole discretion of the Debtor in consultation with the Official Committee, to object to (a) the Sale of the Acquired Assets pursuant to the terms of the agreement reached between the Debtor and the Stalking Horse Bidder or Successful Bidder (a "**Sale Objection**"), and/or (b) (i) the Cure Costs listed by the Debtor and to propose alternative Cure Costs, and/or (ii) the proposed assumption and/or assignment of the Acquired Contracts in connection with the Sale (a "**Contract Objection**"); <u>provided</u>, <u>however</u>, if the Debtor amends the Cure Notice to add a contract or lease or to reduce the Cure Costs thereof, after the Contract Objection Deadline, except where such reduction was upon mutual agreement of the parties, the non-Debtor parties to the added contract or lease or to the reduced Cure Costs contract or lease shall have until three (3) days after such amendment to submit an objection (the "**Amended Contract Objection Deadline**"); and <u>provided further, however</u>, if the Auction takes place on the Secondary Auction Date all parties shall have until 10:00 a.m. (Prevailing Eastern Time) on

September 20, 2012 to object to the Sale of the Acquired Assets pursuant to the terms of the agreement reached between the Debtor and the Successful Bidder at such Auction (the "**Secondary Objection Deadline**").

18.     Objections, if any, shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the District of Maryland, shall set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against the Debtor's estate or properties, the basis for the objection and the specific grounds therefore, and shall be filed with the Bankruptcy Court and be served upon: (i) counsel for the Debtor, Greenberg Traurig, LLP, 1750 Tysons Boulevard, Suite 1200, McLean, Virginia 22102 (Attn:  Lawrence E. Rifken, Esq. and Thomas J. McKee, Jr., Esq.); (ii) counsel to the Stalking Horse Bidder, Burr & Forman LLP, 420 20th Street North, Suite 3400, Birmingham, AL 35203 (Attn: Derek Meek, Esq.); (iii) counsel for the Official Committee, Sands Anderson PC, 1111 East Main Street, Richmond, VA 23218 (Attn: Roy M. Terry, Esq. and William A. Gray, Esq.); and (iv) the Office of the United States Trustee, 6305 Ivy Lane, Suite 600, Greenbelt, Maryland 20770 (Attn: Lynn A. Kohen, Esq.), so that such objection is received no later than the applicable objection deadline.

19.     Unless a Sale Objection is filed and served before the Objection Deadline or the Secondary Objection Deadline, as applicable, all parties shall be forever barred from objecting to the Sale to the Stalking Horse Bidder or the Successful Bidder, as applicable.

20.     Unless a Contract Objection is filed and served before the Objection Deadline or the Amended Contract Objection Deadline, as applicable, all Contract parties shall be (i) forever barred from objecting to the proposed Cure Costs and from asserting any additional cure or other amounts, and the Debtor and the Purchaser shall be entitled to rely solely upon the proposed

Cure Costs set forth in the Cure Notices; (ii) deemed to have consented to the assumption and assignment, (iii) forever barred and estopped from asserting or claiming against the Debtor or the Stalking Horse Bidder, or the Successful Bidder, as applicable, that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Acquired Contracts, including without limitation adequate assurance of future performance; (iv) precluded from objecting to the Cure Costs (if any) and the assumption and assignment; and (v) barred and estopped from asserting or claiming that their Acquired Contract contains an enforceable consent right.

21.     The Debtor, the non-Debtor Contract Party and the Successful Bidder may consensually resolve any Contract Objection prior to the Sale Hearing.  In the event that a Contract Objection is not resolved, such Contract Objection will be heard at the Sale Hearing or thereafter.

22.     The Debtor is hereby authorized to share certain of the Contracts that contain confidentiality restrictions with Qualified Bidders, including the Stalking Horse Bidder, subject to the terms of the non-disclosure agreement by and between the Debtor and the Qualified Bidders, provided that each such Qualified Bidder requesting access to such confidential contracts enters into a non-disclosure agreement with the Debtor, in a form acceptable to the Debtor and the Stalking Horse Bidder.

23.     The requirement that a consumer privacy ombudsman be appointed is hereby waived.

24.     All Qualified Bidders, including the Stalking Horse Bidder, at the Auction are deemed to have consented to the exclusive jurisdiction of the Bankruptcy Court and to have waived any right to a jury trial in connection with any disputes among any Qualified Bidder and

the Debtor relating to the Auction and the construction and enforcement of the Qualified Bidder's contemplated Transaction documents, as applicable.

25.    The Sale Notice provides proper notice to all parties in interest and is approved.

26.    Within two (2) business days of the entry of this Order, the Debtor shall serve by first class mail, postage prepaid, copies of the Sale Notice (which references the online availability of this Order and Exhibits at www.kccllc.net/neogenix) upon the following entities: (a) the Office of the United States Trustee for the District of Maryland; (b) counsel to Precision Biologics, Inc.; (c) counsel for the Official Committee; (d) all creditors, if any; (e) all taxing authorities having jurisdiction over any of the Acquired Assets subject to the sale, including the Internal Revenue Service; (f) all parties that have requested special notice pursuant to Bankruptcy Rule 2002 as of the date prior to the date of entry of this order; (g) all persons or entities known to the Debtor that have or have asserted a lien on, or security interest in, all or any portion of the Acquired Assets; (h) all Contract Parties; (i) all Attorneys General for the states in which the Debtor conducts business; (j) all potential bidders previously identified or otherwise known to the Debtor that have expressed an interest in the acquiring the Debtor's assets; (k) the Securities and Exchange Commission; and (l) all equity security holders.

27.    The Cure Notice provides proper notice to all parties in interest and is approved. Within two (2) business days of entry of this Order, the Debtor shall serve by first class mail, postage prepaid, copies of the Cure Notice on the Contract Parties.

28.    This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

29.    Nothing in this Order, the Agreement, or any other purchase agreement with any other party shall relieve or excuse the Debtor, the Stalking Horse Bidder, the Purchaser, or any

other party from complying with any and all applicable federal securities laws, rules, and regulations with respect to the offer, sale, purchase or distribution of securities or otherwise.

30.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Order.

31.     This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order and the Bid Procedures.

cc:     Attached Service List

**End of Order**

<u>Service List</u>

*Counsel for the Debtor*
Lawrence E. Rifken, Esq.
Thomas J. McKee, Jr., Esq.
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1200
McLean, Virginia 22102
Telephone: (703) 749-1300
Facsimile: (703) 749-1301
rifkenl@gtlaw.com
mckeet@gtlaw.com

 - and-

Maria J. DiConza, Esq.
Greenberg Traurig, LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
diconzam@gtlaw.com

*Office of The United States Trustee*
Lynn A. Kohen, Esq.
Office of The United States Trustee
6305 Ivy Lane, Suite 600
Greenbelt, MD 20770
Telephone: (301) 344-6216
Facsimile: (301) 344-8431
lynn.a.kohen@usdoj.gov

*Counsel for Precision Biologics, Inc.*
Gene T. Price, Esq.
Derek Meek, Esq.
Burr & Forman LLP
420 20th Street North, Suite 3400
Birmingham, AL 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
dmeek@burr.com
gprice@burr.com

 - and -

Richard L. Costella, Esq.
Miles & Stockbridge, P.C.
10 Light Street
Baltimore, MD 21202
rcostell@milesstockbridge.com
Facsimile:  (410) 698-1014

*Counsel for the Official Committee*
Roy M. Terry, Esq.
Elizabeth L. Gunn, Esq.
William A. Gray, Esq.
Sands Anderson PC
1111 East Main Street
P.O. Box 1998
Richmond,  VA 23218-1998
Telephone: (804) 648-1636
Facsimile: (804) 783-7291
RTerry@sandsanderson.com
EGunn@sandsanderson.com

*Counsel for Daniel J. Scher*
KLG Luz & Greenberg, LLP
Attn:  Thomas J. Luz, Esq.
370 Lexington Ave., 24th Fl.
New York, NY 10017
Telephone: (212) 681-8313
Facsimile: (212) 208-2917
tluz@karalaw.com

14

Securities & Exchange Commission
Attention:  Susan Sherrill, Esq.
100 F. Street NE
Washington, DC 20549
Telephone: (202) 942-8088
sherrill-beard@sec.gov

 - and -

Securities & Exchange Commission
Philadelphia Regional Office
The Mellon Independence Center
701 Market Street
Philadelphia, PA 19106-1532
Telephone: (215) 597-3100
philadelphia@sec.gov


Maryland State Department of Assessments
and Tax
301 W. Preston St.
Baltimore, MD 21201-2395


New York State Office of the Attorney General
The Capitol
Albany, NY 12224-0341

Maryland State Office of the Attorney General
200 St. Paul Place
Baltimore, MD 21202

State of Maryland
Department of Labor, Licensing and
Regulation
Office of Unemployment Insurance
Contributions Division
Litigation and Prosecution Unit
1100 North Eutaw, Room 401
Baltimore, MD 21201

Internal Revenue Service
Director - Insolvency Section
31 Hopkins Plaza, Room 1150
Baltimore, MD 21202

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

New York State Department of Tax and
Finance
Department of Taxation and Finance
Att:  Office of Counsel
Building 9, W.A. Harriman Campus
Albany, NY 12227

# EXHIBIT 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
**Greenbelt Division**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **NEOGENIX ONCOLOGY, INC.,** | **Case No. 12-23557 (TJC)** |
| **Debtor.** | |

## BID PROCEDURES

The above captioned debtor and debtor-in-possession (the "**Debtor**") filed a chapter 11 case, which is pending in the United States Bankruptcy Court for the District of Maryland, under Case No. 12-23557 (TJC).  By motion dated July 24, 2012 (the "**Motion**"), the Debtor sought, among other things, approval of the processes and procedures set forth below (the "**Bid Procedures**") to effectuate the sale of the Acquired Assets (the "**Transaction**" or "**Sale**").[1]  The Bid Procedures are designed to facilitate a full, open and fair bidding process to maximize the value of the Acquired Assets for the benefit of the Debtor's stakeholders and its bankruptcy estate.

On September 14, 2012, at 10:00 a.m. (Prevailing Eastern Time), as further described below, the Bankruptcy Court shall conduct a hearing (the "**Sale Hearing**") at which time the Debtor shall seek the entry of an order (the "**Sale Order**") authorizing and approving the sale of the Acquired Assets to the Stalking Horse Bidder (as defined below) or the Successful Bidder (as defined below), as applicable.  In the event that the Auction (as defined below) takes place on the Secondary Auction Date (as defined below), the Bankruptcy Court shall conduct the Sale Hearing on September 20, 2012 at 1:00 p.m. (Prevailing Eastern Time).

*Assets for Sale*

The Debtor is offering for sale in one or more transactions all or substantially all of the assets of the Debtor.

*Asset Purchase Agreement*

The Debtor and Precision Biologics, Inc. (the "**Stalking Horse Bidder**") have entered into an asset purchase agreement (the "**Agreement**"), pursuant to which the Stalking Horse Bidder will acquire the Acquired Assets.  The Acquired Assets do not include the Excluded Assets.  The Transaction contemplated by the Agreement is subject to competitive bidding, as set forth herein, and approval by the Bankruptcy Court pursuant to sections 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**").

---

[1] Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the Agreement (defined herein) or the Motion, as applicable.

_Participation Requirements_

Unless otherwise ordered by the Bankruptcy Court, in order to participate in the bidding process, each person (a "**Potential Bidder**"), other than the Stalking Horse Bidder, must first deliver (unless previously delivered) to the Debtor's investment banker and counsel (as identified below), the following items (collectively, the "**Participation Requirements**"):

(a)   Confidentiality Agreement.   An executed confidentiality agreement in form and substance reasonably acceptable to the Debtor (each, a "**Confidentiality Agreement**");

(b)   Identification of Potential Bidder.   Identification of the Potential Bidder and any principals and representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated Sale; and

(c)   Proof of Ability to Close.   Written evidence that enables the Debtor and its representatives to determine, in their sole discretion in consultation with the official committee of equity security holders (the "**Official Committee**"), whether the Potential Bidder has the ability to close the contemplated Sale and provide adequate assurance of future performance under all contracts to be assumed in such contemplated Sale.

_Designation as Qualified Bidder_

A "**Qualified Bidder**" is a Potential Bidder (or a combination of Potential Bidders whose Bids for the assets of the Debtor do not overlap and who agree to have their Bids combined for the purposes of the determination of whether such Potential Bidders together constitute a Qualified Bidder, and who shall also be referred to herein as a single Qualified Bidder) that delivers the documents satisfying the Participation Requirements described in subparagraphs (a)-(c) above and that the Debtor determines, in its sole discretion in consultation with the Official Committee, is reasonably likely to submit a _bona fide_ offer and to be able to consummate a sale if selected as a Successful Bidder (as defined below).

The Stalking Horse Bidder is a Qualified Bidder, and the Stalking Horse Bidder's bid is a Qualified Bid, as defined herein.

_Access to Due Diligence Materials_

Upon satisfaction of the Participation Requirements, the Debtor will afford each Qualified Bidder due diligence access to the Acquired Assets; provided, however, that (i) the Debtor shall have the right to reasonably limit the due diligence provided to competitors; and (ii) the Debtor will have no obligation to provide due diligence access after the Bid Deadline (as defined below).   If the Debtor determines that a Potential Bidder that has satisfied the Participation Requirements does not constitute a Qualified Bidder, then such Potential Bidder's rights to receive due diligence access or additional non-public information shall terminate.   The Debtor has designated and employed Piper Jaffray & Co. to coordinate all reasonable requests from Potential Bidders for additional information and due diligence access.   The Debtor and its

2

representatives are not responsible for, and will bear no liability with respect to, any information obtained by the Qualified Bidders in connection with the Sale of the Acquired Assets.

## Bidding Process

The Debtor and its advisors, in consultation with the Official Committee, shall (i) determine whether a Potential Bidder is a Qualified Bidder, (ii) coordinate efforts of the Qualified Bidders in conducting their due diligence investigation, as permitted by the provisions above, (iii) receive offers from the Qualified Bidders; and (iv) negotiate the offers made to purchase the Acquired Assets (collectively, the "**Bidding Process**"). The Debtor shall have the right, in consultation with the Official Committee, to adopt such other rules for the Bidding Process (including rules that may depart from those set forth herein) that will better promote the goals of the Bidding Process and that are not inconsistent with any of the other provisions hereof or of any Bankruptcy Court order.

### Bid Deadline

The deadline for submitting bids by a Qualified Bidder, other than the Stalking Horse Bidder, shall be September 6, 2012 at 5:00 p.m. (Prevailing Eastern Time) (the "**Bid Deadline**"). A Bid (as defined below) received after the Bid Deadline shall not constitute a Qualified Bid (as defined below).

Prior to the Bid Deadline, a Qualified Bidder, other than the Stalking Horse Bidder, that desires to make an offer, solicitation or proposal (a "**Bid**") shall deliver written copies of its Bid to the Debtor's investment banker, Piper Jaffray & Co., Hyatt Center, 24th Floor, 71 S. Wacker Drive, Chicago, IL 60606 (Attn: Peter M. Schwab) and counsel to the Debtor, Greenberg Traurig, LLP, 1750 Tysons Boulevard, Suite 1200, McLean, Virginia 22102 (Attn: Lawrence E. Rifken, Esq. and Thomas J. McKee, Jr., Esq.). Counsel to the Debtor shall promptly provide copies of such Bids to counsel to the Official Committee.

### Determination of Qualified Bid Status

To be eligible to participate in the bidding process, each Qualified Bidder, other than the Stalking Horse Bidder, must deliver to the Debtor a written offer to be received by the Bid Deadline and compliant with each of the following conditions:

(a)     The Same or Better Terms.  A Bid must be on terms that, in the Debtor's reasonable business judgment in consultation with the Official Committee, are substantially the same or better than the terms of the Agreement.  A Bid must include fully executed Sale documents, pursuant to which the Qualified Bidder proposes to effectuate the contemplated Sale.  A Bid shall include a black-lined copy of the Agreement (the "**Modified Agreement**") to show all changes requested by the Bidder, including those related to the Purchase Price, and identify each and every executory contract and unexpired lease, the assumption and assignment of which is a condition to closing.  A Bid should propose a contemplated transaction involving all of the Acquired Assets, but the Debtor will consider proposals for less than substantially all of the Acquired Assets, provided that the Debtor may evaluate each Bid, in its sole discretion in consultation with

3

the Official Committee, to determine whether such Bid maximizes the value of the Debtor's estate as a whole.

(b)     <u>No Contingencies</u>.  A Bid may not be conditioned on obtaining internal approval, obtaining financing or on the outcome or review of due diligence, but it may be subject to the accuracy in all material respects at the Closing of specified representations and warranties or the satisfaction in all material respects at the closing of specified conditions, none of which shall be more burdensome than those set forth in the Agreement.

(c)     <u>Authorization to Bid</u>.  Each Bid must include evidence of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Modified Agreement.

(d)     <u>Good Faith Deposit</u>.  Each Bid, with the exception of the Bid by the Stalking Horse Bidder, must be accompanied by a cash deposit in an amount equal to five percent (5%) of the cash portion of the highest proposed purchase price offered by the Qualified Bidder in its Qualified Bid (the "**Good Faith Deposit**").

(e)     <u>Back-Up Bidder</u>.  Each Bid must contain an agreement that the Bidder will be a Back-Up Bidder (as defined below).

(f)     <u>No Fees payable to Qualified Bidder</u>.  A Bid, other than the Stalking Horse Bid, may not request or entitle the Qualified Bidder to any break-up fee, termination fee, or similar type of payment.

(g)     <u>Financing Sources</u>.  A Bid must contain evidence of the ability to consummate the Sale satisfactory to the Debtor with appropriate contact information for all such financing sources and may not contain any financing contingency.

(h)     <u>Minimum Initial Bid Requirement</u>.  Each Qualified Bidder's Bid shall have an initial minimum bid requirement equal to the Stalking Horse Bid, <u>plus</u> the $475,000 Break-Up Fee, <u>plus</u> $150,000 (the "**Minimum Initial Bid**"), in cash (or cash equivalents).

(i)     <u>Other Evidence</u>. Each Bid must contain evidence satisfactory to the Debtor, in consultation with the Official Committee, that the Qualified Bidder (based on availability of financing, experience and other considerations or conditions) will be able to timely consummate the Sale to purchase the Acquired Assets if selected as the Successful Bidder (as defined below).

(i)     <u>Representation of Non-Collusion</u>.  Pursuant to Local Rule 6004-1, each bidder participating at the Auction must confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements, in the Debtor's reasonable business judgment in consultation with the Official

Committee, and satisfies the Bid Deadline requirement above, shall constitute a qualified bid (a "**Qualified Bid**").  The Debtor shall provide counsel for the Official Committee with copies of all Bids promptly upon receipt and shall promptly inform counsel for the Official Committee as to which Bids the Debtor has determined to be Qualified Bids.  In the event of a dispute between the Official Committee and the Debtor as to whether a Bid is a Qualified Bid, the Court will hold a hearing on September 10, 2012 at 2:00 p.m. to resolve any such dispute.

**Auction**

Only in the event that the Debtor timely receives at least one (1) Qualified Bid (other than that of the Stalking Horse Bidder) by the Bid Deadline, the Debtor will hold an auction (the "**Auction**"), on September 11, 2012 at 10:00 a.m. (the "**Auction Date**") at the offices of Greenberg Traurig, LLP, 1750 Tysons Boulevard, Suite 1200, McLean, VA 22102, provided, however, that if at the end of the Bid Deadline there is a bona fide prospective purchaser who is interested in potentially submitting a Qualified Bid that is actively engaged in obtaining information from the Debtor in order to make a Qualified Bid, the Auction shall be held on September 19, 2012, at 10:00 a.m. (the "**Secondary Auction Date**") at the location identified above.

*Participation in the Auction*

Only the Debtor, the Official Committee, the Stalking Horse Bidder, and any other Qualified Bidder who has timely submitted a Qualified Bid (and professional advisors to each of these parties) may attend the Auction.  Only the Stalking Horse Bidder and other Qualified Bidders may make any subsequent Qualified Bids at the Auction.

The Debtor and its professional advisors shall direct and preside over the Auction.  At the beginning of the Auction, the Debtor and its professional advisors will announce the highest Qualified Bid received by the Bid Deadline which shall serve as the baseline bid at the Auction (the "**Baseline Bid**").  All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders and the Stalking Horse Bidder.  The Debtor shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid (as defined below).

*Terms of Overbids*

An "**Overbid**" is any Bid made at the Auction subsequent to the Debtor's announcement of the Baseline Bid.  Any Qualified Bidder's initial Overbid shall be at least the Baseline Bid, plus at least $100,000 in cash, cash equivalents or such other consideration that the Debtor, in consultation with the Official Committee, deems equivalent over the previous highest or best bid.  Subsequent overbids must be made in increments of at least $100,000 in cash, cash equivalents or such other consideration that the Debtor, in consultation with the Official Committee, deems equivalent over the previous highest or best bid.

Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder unless and until the Debtor accepts a higher Qualified Bid as an Overbid.  The Debtor

5

shall announce at the Auction the material terms of each Overbid and the basis for calculating the total consideration offered in each such Overbid.

*Closing the Auction*

At the conclusion of the Auction, the Debtor will determine, in consultation with the Official Committee, considering factors such as the financial and contractual terms of each bid and factors affecting the speed, certainty of closing each bid and net proceeds to the Debtor, the highest or otherwise best bid(s) (the "**Successful Bid(s)**" and the person(s) submitting the Successful Bid(s) referenced herein as the "**Successful Bidder(s)**") and submit such bid(s) for approval to the Bankruptcy Court at the Sale Hearing. The Debtor shall further determine, in consultation with the Official Committee, considering factors such as the financial and contractual terms of each bid and factors affecting the speed, certainty of closing each bid and net proceeds to the Debtor, the bid that is the next highest or otherwise best bid(s) after the Successful Bid(s) (the "**Back-up Bid(s)**" and the person(s) submitting the Back-up Bid(s) referenced herein as the "**Back-up Bidder(s)**") In addition, in determining the Successful Bid(s) and the Back-up Bid(s), the Debtor, in consultation with the Official Committee, will give preference to competing bids in substantially the same form as the transaction contemplated by the Agreement, with the purchase price payable in a combination of cash, stock and rights and will look with disfavor on any bid that does not include a substantial equity component.  The Debtor shall advise the Qualified Bidders of such determinations.  The Back-Up Bid shall remain open and irrevocable, and the Back-Up Bidder shall be required to fully perform under such Back-Up Bid, until the earlier of consummation of the Transaction with the Successful Bidder or thirty (30) days following the Closing Date set forth in the Successful Bid.

In the event that no Qualified Bids other than the Stalking Horse Bid are received by the Bid Deadline, the Auction shall be cancelled and the Stalking Horse Bid shall be deemed the Successful Bid.

*Failure to Close*

In the event that the Successful Bidder fails to consummate the Transaction as a result of the Successful Bidder's default or breach under the applicable purchase agreement in accordance with the terms of such purchase agreement by the closing date contemplated in such purchase agreement, the Debtor shall be: (i) entitled to retain the Successful Bidder's Good Faith Deposit as part of its damages resulting from the breach or failure to perform by the Successful Bidder (along with any other rights available under such purchase agreement); and (ii) be free to enter into a new purchase agreement with the Back-Up Bidder at the purchase price contemplated in the Back-Up Bid.

Following the approval of the Sale of the Acquired Assets to the Successful Bidder at the Sale Hearing, if such Successful Bidder fails to consummate the approved Sale within fifteen (15) days after the entry of an Order approving such Sale, the Debtor shall be authorized, but not required, to deem the Back-Up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Debtor shall be authorized, but not required, to consummate the Sale with the Back-Up Bidder without further order of the Bankruptcy Court.

In the event that the Stalking Horse Bidder is the Back-Up Bidder and the Successful Bidder is unable to close for any reason, the Stalking Horse Bidder's Back-Up Bid will be deemed to be equal to the highest bid made by the Stalking Horse Bidder prior to the first bid made by the Successful Bidder that was not topped by a subsequent bid from a bidder other than the Stalking Horse Bidder, and the Stalking Horse Bidder shall be obligated to close on the Back-Up Bid.

*Consent to Jurisdiction as Condition to Bidding*

All Qualified Bidders, including the Stalking Horse Bidder, at the Auction shall be deemed to have consented to the exclusive jurisdiction of the Bankruptcy Court and to have waived any right to a jury trial in connection with any disputes among any Qualified Bidder and the Debtor relating to the Auction and the construction and enforcement of the Qualified Bidder's contemplated Transaction documents, as applicable.

*Acceptance of Successful Bid*

The Debtor shall sell the Acquired Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing.  The Debtor's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtor's acceptance of such Qualified Bid.  The Debtor will be deemed to have accepted a Bid only when the Bid has been approved by the Bankruptcy Court at the Sale Hearing.

*Free of Any and All Interests*

As set forth in the Agreement, except as otherwise provided for therein or in another Successful Bidder's purchase agreement, all rights, titles and interests in and to the Acquired Assets subject thereto shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "**Interests**"), in accordance with section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds received by the Debtor from the Sale of the Acquired Assets (the "**Sale Proceeds**").

*Sale Hearing*

The Sale Hearing shall be conducted by the Bankruptcy Court on September 14, 2012, at 10:00 a.m. (Prevailing Eastern Time) or, in the event that the Auction takes place on the Secondary Auction Date, on September 20, 2012 at 1:00 p.m. (Prevailing Eastern Time).

*Return of Good Faith Deposit*

The Good Faith Deposits of Qualified Bidders, other than the Back-Up Bidder, shall be held in an interest-bearing escrow account until five (5) business days after the closing of the Auction, and thereafter returned to the respective bidders.  The Good Faith Deposit of the Back-Up Bidder shall be held in an interest-bearing escrow account and shall be (i) applied to the Purchase Price in the event that Successful Bidder fails to close and the Debtor opts to consummate the Transaction with the Back-Up Bidder; or (ii) returned to the Back-Up Bidder on

the earlier of the date of the Closing with the Successful Bidder or the thirtieth (30th) day following the Closing Date set forth in the Successful Bid. In the event of a breach or failure to consummate an approved sale by the Successful Bidder, or by the Back-Up Bidder in the event the Successful Bidder fails to consummate an approved sale and the Debtor determines to consummate the Transaction with the Back-Up Bidder, the Debtor shall be entitled to retain the Good Faith Deposit as part of its damages resulting from the breach or failure to perform by the Successful Bidder or Back-Up Bidder, as applicable (along with any other rights available under their respective purchase agreements).

*Break-Up Fee*

As consideration for the value of the Stalking Horse Bidder's bid, in the event that the Debtor consummates the Transaction with any party other than the Stalking Horse Bidder, subject to the terms of the Agreement, the Debtor shall pay to the Stalking Horse Bidder a $475,000 break-up fee (the "**Break-Up Fee**") out of the cash portion of the consideration of the Successful Bid. In all subsequent bids at the Auction, the Stalking Horse Bidder shall get a dollar-for-dollar credit for the amount of the Break-Up Fee against the Overbid amount.

*Modifications*

The Bid Procedures may be modified by the Debtor in the exercise of its reasonable business judgment in consultation with the Official Committee; provided that all such modifications are disclosed to all Potential Bidders or Qualified Bidders, as applicable, prior to or during the Auction and disclosed to the Court at the Sale Hearing. The Debtor, in the exercise of its reasonable business judgment in consultation with the Official Committee, may (a) waive terms and conditions set forth herein with respect to any or all potential bidders, (b) impose additional terms and conditions with respect to any or all potential bidders, (c) extend the deadlines set forth herein or the date for the Auction, (d) cancel or extend the sale of the Acquired Assets and/or Sale Hearing in open court without further notice; and (e) amend the Bid Procedures as they may determine to be in the best interests of the estate. Any such modifications shall be disclosed to the Court at the Sale Hearing.

The Debtor, in the exercise of its reasonable business judgment in consultation with the Official Committee, may also (a) determine which Qualified Bid, if any, is the highest or otherwise best offer; and (b) reject, at any time before the entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of the Sale; or (iii) contrary to the best interests of the Debtor, its estate, and its stakeholders.

*       *       *       *       *

# EXHIBIT 2

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### Greenbelt Division

|  |  |
|---|---|
| In re: | )    **Chapter 11** |
| **NEOGENIX ONCOLOGY, INC.,** | )    **Case No. 12-23557 (TJC)** |
| Debtor. | ) |

## NOTICE OF BID DEADLINE, AUCTION, AND SALE
## HEARING IN CONNECTION WITH THE SALE OF
## <u>SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS</u>

NOTICE IS HEREBY GIVEN, as follows:

       1.      On July 24, 2012, the above-captioned debtor and debtor in possession (the "**Debtor**") filed a motion seeking approval of among other things (i) bid procedures (the "**Bid Procedures**") and bid protections in connection with the sale (the "**Sale**") of substantially all of the Debtor's assets (the "**Acquired Assets**"), (ii) procedures to determine cure amounts and deadlines for objections to certain contracts and leases to be assumed and assigned by the Debtor, (iii) the date, time and place for a sale hearing (the "**Sale Hearing**") and for objections to the Sale and (iv) related relief (the "**Bid Procedures Motion**") with the United States Bankruptcy Court for the District of Maryland (the "**Bankruptcy Court**"). By order dated August ___, 2012, the Bankruptcy Court approved the Bid Procedures and the Bid Procedures Motion (the "**Bid Procedures Order**").[1]

       2.      The Debtor has entered into an asset purchase agreement (the "**Agreement**") with Precision Biologics, Inc., as buyer (the "**Stalking Horse Bidder**"), for the sale of the Acquired Assets free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon to the maximum extent permitted by section 363 of the Bankruptcy Code, but as set forth in the Bid Procedures, the sale of the Acquired Assets remains subject to competing offers from any prospective bidder that submits a Qualified Bid.

       3.      All interested parties are invited to submit a Qualified Bid and to make offers to purchase the Acquired Assets in accordance with the terms of the Bid Procedures and the Bid Procedures Order. The Bid Deadline is September 6, 2012 at 5:00 p.m. (Prevailing Eastern Time).

       4.      Pursuant to the Bid Procedures Order, in the event that the Debtor receives one or more Qualified Bids in addition to the bid of the Stalking Horse Bidder on or before the

---

[1]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Bid Procedures Order. A copy of the Bid Procedures Order and related exhibits can be obtained at www.kccllc.net/neogenix or by written request to the Debtor's counsel.

Bid Deadline, the Debtor shall conduct the Auction for the purpose of determining the highest and best bid for the Acquired Assets. Only the Debtor, the official committee of equity security holders (the "**Official Committee**"), the Stalking Horse Bidder, and any other parties submitting Qualified Bids, as that term is defined in the Bid Procedures (and professional advisors to each of these parties), will be eligible to participate in the Auction. The Auction will be held on September 11, 2012 at 10:00 a.m. (the "**Auction Date**") at the offices of Greenberg Traurig, LLP, 1750 Tysons Boulevard, Suite 1200, McLean, VA 22102, provided, however, that if at the end of the Bid Deadline there is a bona fide prospective purchaser who is interested in potentially submitting a Qualified Bid that is actively engaged in obtaining information from the Debtor in order to make a Qualified Bid, the Auction shall be held on September 19, 2012, at 10:00 a.m. (the "**Secondary Auction Date**") at the location set forth above.

   5. The Court shall conduct a hearing (the "**Sale Hearing**") on September 14, 2012 at 10:00 a.m. (Prevailing Eastern Time), at which time, the Court will consider approval of the Sale to the Successful Bidder and the entry of the Sale Order; provided however, that in the event that the Auction takes place on the Secondary Auction Date, the Sale Hearing shall commence on September 20, 2012 at 1:00 p.m. (Prevailing Eastern Time).

   6. At the Sale Hearing or such other time as the Bankruptcy Court shall determine, the Debtor intends to seek the Bankruptcy Court's approval of the sale of the Acquired Assets and the assumption and assignment of certain unexpired leases and executory contracts, (collectively, the "**Acquired Contracts**") to the Stalking Horse Bidder pursuant to the terms of the Agreement, or to the Successful Bidder at the Auction (the "**Successful Bidder**"). In determining the Successful Bidder, in addition to the amount of cash or cash equivalent consideration offered, the Debtor will consider, among other factors, the assumption of liabilities contemplated by each Qualified Bid, and will give preference to competing bids in substantially the same form as the transaction contemplated by the Agreement. The Sale Hearing will be held before the Honorable Thomas J. Catliota, at the United States Bankruptcy Court for the District of Maryland, 6500 Cherrywood Lane, Greenbelt, Maryland 20770.

   7. At the Sale Hearing, the Bankruptcy Court may enter such orders as it deems appropriate under applicable law and as required by the circumstances and equities of this chapter 11 case. Any party seeking to object shall have until September 12, 2012 at 5:00 p.m. (Prevailing Eastern Time) (the "**Objection Deadline**"), which deadline may be extended in the sole discretion of the Debtor in consultation with the Official Committee, to object to (a) the Sale of the Acquired Assets pursuant to the terms of the agreement reached between the Debtor and the Stalking Horse Bidder or Successful Bidder (a "**Sale Objection**"), and/or (b) (i) the Cure Costs listed by the Debtor and to propose alternative Cure Costs, and/or (ii) the proposed assumption and/or assignment of the Acquired Contracts in connection with the Sale (a "**Contract Objection**"); provided, however, if the Debtor amends the Cure Notice to add a contract or lease or to reduce the Cure Costs thereof, after the Contract Objection Deadline, except where such reduction was upon mutual agreement of the parties, the non-Debtor parties to the added contract or lease or to the reduced Cure Costs contract or lease shall have until three (3) days after such amendment to submit an objection (the "**Amended Contract Objection Deadline**"); and provided further however, that if the Auction takes place on the Secondary Auction Date all parties shall have until 10:00 a.m. (Prevailing Eastern Time) on September 20, 2012 to object to the Sale of the Acquired Assets pursuant to the terms of the agreement reached

between the Debtor and the Successful Bidder at such Auction (the "**Secondary Objection Deadline**").

8.      Objections, if any, shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the District of Maryland, shall set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against the Debtor's estate or properties, the basis for the objection and the specific grounds therefore, and shall be filed with the Bankruptcy Court and be served upon: (i) counsel for the Debtor, Greenberg Traurig, LLP, 1750 Tysons Boulevard, Suite 1200, McLean, Virginia 22102 (Attn:  Lawrence E. Rifken, Esq. and Thomas J. McKee, Jr., Esq.); (ii) counsel to the Stalking Horse Bidder, Burr & Forman LLP, 420 20th Street North, Suite 3400, Birmingham, AL 35203 (Attn: Derek Meek, Esq.); (iii) counsel for the Official Committee, Sands Anderson PC, 1111 East Main Street, Richmond, VA 23218 (Attn: Roy M. Terry, Esq. and William A. Gray, Esq.); and (iv) the Office of the United States Trustee, 6305 Ivy Lane, Suite 600, Greenbelt, Maryland 20770 (Attn: Lynn A. Kohen, Esq.), so that such objection is received no later than the applicable Objection Deadline.

9.      Requests for any other information concerning the Bid Procedures or the Sale should be directed by written request to the undersigned Debtor's counsel.

Dated:  August 23, 2012          **GREENBERG TRAURIG, LLP**


By:_____
       Lawrence E. Rifken, Esq. (*Pro Hac Vice*)
       Thomas J. McKee, Jr., Esq. (MD Bar No. 16517)
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1200
McLean, Virginia 22102
(703) 749-1300
(703) 749-1301 fax
rifkenl@gtlaw.com
mckeet@gtlaw.com

- and -

Maria J. DiConza (*Pro Hac Vice*)
Greenberg Traurig, LLP
200 Park Avenue
New York, NY 10166
(212) 801-9278
(212) 805-9278 fax
diconzad@gtlaw.com

Counsel for Debtor and Debtor-in-Possession

# EXHIBIT 3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| NEOGENIX ONCOLOGY, INC., | ) | Case No. 12-23557 (TJC) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

### NOTICE OF THE DEBTOR'S INTENT TO ASSUME AND ASSIGN CERTAIN LEASES AND EXECUTORY CONTRACTS AND FIXING OF CURE COSTS

PLEASE TAKE NOTICE that, on July 24, 2012, the above-captioned debtor and debtor in possession (the "**Debtor**") filed a motion seeking the approval of, among other things (i) bid procedures (the "**Bid Procedures**") and bid protections in connection with the sale of substantially all of the Debtor's assets (the "**Acquired Assets**"); (ii) procedures to determine cure amounts and deadlines for objections to certain contracts and leases to be assumed and assigned by the Debtor (the "**Cure Procedures**"); and (iii) related relief (the "**Bid Procedures Motion**") with the United States Bankruptcy Court for the District of Maryland (the "**Bankruptcy Court**"). By order dated August ___, 2012, the Bankruptcy Court approved the Bid Procedures and the Bid Procedures Motion (the "**Bid Procedures Order**").[1]

PLEASE TAKE FURTHER NOTICE, that the Court shall conduct a hearing the ("**Sale Hearing**"), on September 14, 2012 at 10:00 a.m. (Prevailing Eastern Time) or, if the Auction takes place on the Secondary Auction Date, on September 20, 2012 at 1:00 p.m. (Prevailing Eastern Time). At the Sale hearing the Debtor intends to seek the approval of the sale of the Acquired Assets free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon to the maximum extent permitted by section 363 of the Bankruptcy Code (the "**Sale**") to Precision Biologics, Inc., as buyer (the "**Stalking Horse Bidder**"), pursuant to the terms of a purchase agreement with the Stalking Horse Bidder (the "**Agreement**"), or to such other party as is determined pursuant to the Bid Procedures to have submitted the highest and best bid for the Acquired Assets (the "**Successful Bidder**").

PLEASE TAKE FURTHER NOTICE that, pursuant to the Cure Procedures, at the Sale Hearing, the Debtor intends to seek the approval to assume and assign certain of the Debtor's unexpired leases and executory contracts (collectively, the "**Acquired Contracts**"), to the Stalking Horse Bidder or the Successful Bidder, as applicable, pursuant to section 365 of the Bankruptcy Code. You have been identified as a party to an Acquired Contract that the Debtor

---

[1]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Bid Procedures Order. A copy of the Bid Procedures Order can be obtained at www.kccllc.net/neogenix or by written request to Debtor's counsel.

may seek to assume and assign.  The Acquired Contract with respect to which you have been identified as a non-Debtor party is set forth on **Exhibit "2"** annexed hereto.

PLEASE TAKE FURTHER NOTICE that, the Debtor believes that any and all defaults (other than the filing of this chapter 11 case), actual pecuniary losses and any amounts due under the Acquired Contracts can be cured and satisfied in full by the payment of the cure amount, also set forth on **Exhibit "2"** annexed hereto (the "**Cure Costs**").

PLEASE TAKE FURTHER NOTICE that, you have until September 12, 2012 at 5:00 p.m. (Prevailing Eastern Time) (the "**Objection Deadline**"), which deadline may be extended in the sole discretion of the Debtor in consultation with the official committee of equity security holders (the "**Official Committee**"), to object to (a) the Sale of the Acquired Assets pursuant to the terms of the agreement reached between the Debtor and the Stalking Horse Bidder or Successful Bidder (a "**Sale Objection**"), and/or (b) (i) the Cure Costs listed by the Debtor and to propose alternative Cure Costs, and/or (ii) the proposed assumption and/or assignment of the Acquired Contracts in connection with the Sale (a "**Contract Objection**"); provided, however, if the Debtor amends the Cure Notice to add a contract or lease or to reduce the Cure Costs thereof, after the Objection Deadline, except where such reduction was upon mutual agreement of the parties, the non-Debtor parties to the added contract or lease or to the reduced Cure Costs contract or lease shall have until three (3) days after such amendment to submit a an objection (the "**Amended Contract Objection Deadline**"); and provided further, however, if the Auction takes place on the Secondary Auction Date all parties shall have until 10:00 a.m. (Prevailing Eastern Time) on September 20, 2012 to object to the Sale of the Acquired Assets pursuant to the terms of the agreement reached between the Debtor and the Successful Bidder at such Auction (the "**Secondary Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that any Sale Objection or Contract Objection must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the District of Maryland, shall set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against the Debtor's estate or properties, the basis for the objection and the specific grounds therefore, and shall be filed with the Bankruptcy Court and be served upon: (i) counsel for the Debtor, Greenberg Traurig, LLP, 1750 Tysons Boulevard, Suite 1200, McLean, Virginia 22102 (Attn: Lawrence E. Rifken, Esq. and Thomas J. McKee, Jr., Esq.); (ii) counsel to the Stalking Horse Bidder, Burr & Forman LLP, 420 20th Street North, Suite 3400, Birmingham, AL 35203 (Attn: Derek Meek, Esq.); (iii) counsel for the Official Committee, Sands Anderson PC, 1111 East Main Street, Richmond, VA 23218 (Attn: Roy M. Terry, Esq. and William A. Gray, Esq.); and (iv) the Office of the United States Trustee, 6305 Ivy Lane, Suite 600, Greenbelt, Maryland 20770 (Attn: Lynn A. Kohen, Esq.), so that the Contract Objection is received no later than the applicable objection deadline.  Unless a Contract Objection is timely filed and served, the assumption, sale and assignment of the applicable Acquired Contract will proceed without further notice.

PLEASE TAKE FURTHER NOTICE that, if no Cure Costs are due, or no other amount is due or owing under the Acquired Contract, and the non-debtor party to such agreement does

not otherwise object to the Debtor's assumption, sale and assignment of such agreement, no further action needs to be taken on the part of that non-debtor party.

PLEASE TAKE FURTHER NOTICE that, any person or entity receiving this Notice that fails to file an objection on a timely basis (a) shall be forever enjoined and barred from seeking any additional amount on account of the Debtor's cure obligations under section 365 of the Bankruptcy Code or otherwise from the Debtor, its estate, the Stalking Horse Bidder or the Successful Bidder on account of the assumption and assignment of such executory contract or unexpired lease and deemed to have consented to the Cure Costs; and (b) upon approval by the Bankruptcy Court of the assignment to the Stalking Horse Bidder or the Successful Bidder of the Acquired Contracts, shall be deemed to have waived any right to object, consent, condition or otherwise restrict any such assumption and assignment.

PLEASE TAKE FURTHER NOTICE that, a hearing on Contract Objections may be held (a) at the Sale Hearing, or (b) at such other date prior to or after the Sale Hearing as the Bankruptcy Court may designate upon request by the Debtor.

PLEASE TAKE FURTHER NOTICE that, the Debtor's decision to assume and assign the Acquired Contracts is subject to the Court's approval of and consummation of the Sale. Absent consummation of the Sale, each Acquired Contract shall not be deemed either assumed or assigned and shall in all respects be subject to further administration under the Bankruptcy Code.  The designation of any agreement as an Acquired Contract shall not constitute or be deemed to be a determination or admission by the Debtor, the Stalking Horse Bidder, or any Successful Bidder that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

PLEASE TAKE FURTHER NOTICE that, Debtor reserves the right to remove any Acquired Contract from any proposed asset sale and to withdraw the request to assume and assign any such Acquired Contract.

Dated:                              **GREENBERG TRAURIG, LLP**


By:_____
        Lawrence E. Rifken, Esq. (*Pro Hac Vice*)
        Thomas J. McKee, Jr., Esq. (MD Bar No. 16517)
    Greenberg Traurig, LLP
    1750 Tysons Boulevard, Suite 1200
    McLean, Virginia 22102
    (703) 749-1300
    (703) 749-1301 fax
    rifkenl@gtlaw.com
    mckeet@gtlaw.com

        - and -

Maria J. DiConza (*Pro Hac Vice*)
Greenberg Traurig, LLP
200 Park Avenue
New York, NY 10166
(212) 801-9278
(212) 805-9278 fax
diconzad@gtlaw.com

Counsel for Debtor and Debtor-in-Possession

## Exhibit 2

### Supplier Contracts; Other Contracts

| | Contracts | Cure Costs as of the Petition Date | Cure Costs after the Petition Date |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |

TCO359,822,968v9